BAILES, Judge.
Plaintiff brings this action in tort against Boston Insurance Company and Southern Pipe and Supply Co., Inc., to recover damages for and resulting from certain injuries allegedly received while an invitee in the business establishment of the Southern Pipe and Supply Co., Inc. The defendants appeal from an adverse judgment rendered by the trial court wherein the plaintiff was *453 awarded a judgment in the total sum of $4,901.91.
Boston Insurance Company is the general public liability insurer of the other defendant, Southern Pipe and Supply Co., Inc., which latter named party will be referred to herein as Southern.
At the time of the accident which gave rise to this action, the plaintiff was a plumbing contractor and a regular customer of Southern. On February 8, 1963, the date of the accident, plaintiff went to the place of business of Southern to purchase a drill bit. Upon entering Southern’s place of business in the city of Baton Rouge he was greeted by the salesman who regularly serviced his account, a Mr. A. J. Graphia, III. Upon advising Graphia of his need, Graphia determined that the drill bits of the kind wanted by the plaintiff, were on the balcony. Thereupon, plaintiff told Graphia that he knew where the drill bits were and that if he could see the stock he could point out the one he desired. Plaintiff was advised to follow Graphia up to the balcony where the order could be filled.
At this point it seems advisable to explain in some brief detail the physical surroundings of Southern’s place of business. By doing this, a better appreciation will be obtained of what transpired.
It appears from the evidence that Southern’s place of business in Baton Rouge is located on the Greenwell Springs Road in a large metal clad building. The framework is of welded steel pipe construction with an A-type roof. The balcony occupies the south one-half of the area above the ceiling joists. To gain the balcony, a stair is provided with the top of the stairs extending to the south wall of the building. The stairwell is approximately four feet wide and extends from the south wall to a distance of ten to twelve feet toward the center of the building. In ascending the steps, which are ten in number, one faces the south wall. While the height of the risers is not stated in the record, from the photographs the height of each riser appears to be about ten inches. Extending from a point a short distance above the balcony floor is a metal pipe brace of three to four inches in diameter projecting at approximately a thirty degree angle from the south wall toward the apex of the roof. This brace passes the stairwell about twelve inches to the left of the left ascending side of the stairwell.
On the occasion of the accident, merr chandise was stacked in such manner that one could not walk to the top of the steps, turn left and proceed to the location of the stock of drill bits. However, there was an aisle running perpendicular to the stairwell about twenty-four to thirty inches in width, extending from the left ascending side of the stairwell toward the east or front of the building. In order to walk down this aboye described aisle, one would have to step from the stairs to the balcony floor before reaching the top of the stairs.
On the morning of the accident, Graphia led the way up the stairs and closely following him was the plaintiff. Because of the stacks of boxes of merchandise above described at the head of and to the left of the stairs, when Graphia reached about the second or third step from the top he made a ninety degree turn to his left and stepped from the stairs to the aisle above described. At this point the above referred to metal brace is about four to four and one-half feet above the balcony floor.
Graphia, being aware of the presence of the brace, ducked under it. He testified that as he turned to caution plaintiff of. the presence of the brace and to warn him to be careful of it, the plaintiff very forcefully struck his head on the brace. Plaintiff struck the brace with such force that he rebounded backwards, lost his balance and fell down the steps, thereby incurring the injuries which gave rise to the damages herein sought of the defendants.
Plaintiff testified that the manner in which the steps were constructed caused *454 him to be alert to ascending the stairs. The photographs bear out the plaintiff’s reason for cautiousness. The steps are not cased or enclosed on the back side, but rather are open, and that each succeeding up.per step extends or projects some 'distance over the step next below it. Plaintiff reasoned that this caused him in walking up the steps to watch where he placed his feet. We feel that the plaintiff was completely justified in being more attentive to the maneuver of ascending the stairs than paying attention to what was above him. Further, we find that he was justified in believing that the way ahead of him was clear because he was following Graphia who was thoroughly familiar with the premises. When Graphia turned to his left and stepped up to the balcony, it was a natural reaction for plaintiff to do likewise. When he did so, the accident occurred.
We feel that the following observations of the trial judge are pertinent:
“ * * * The skeleton construction of the stairs is significant because it furnishes a compelling incentive or feeling of necessity to carefully watch the steps as one ascends. At least, that was my own experience in going up the same stairs.
“On the occasion of my visit to the premises one of the attorneys went up the stairs ahead of me. When he reached the top he turned to the left. I was watching the steps as I walked up. When I was about to step to the floor from the first or second step the attorney ahead of me had already ducked under the beam, but I did not see him do it. I saw his legs when he stopped, turned around and said, ‘This is the beam Murry struck.’ While still on the step I looked ahead for it. I was looking for something perpendicular, and was almost in the act of stepping up to the floor when I looked above my head to see why the attorney was standing in my way. Without his standing,in the passage and the warning he gave my head would have hit the beam in another second.
“The situation there is a dangerous trap, and one who does not know about the beam or is not timely warned about it is in great danger of hitting the beam with one’s head if one traverses that course. Mr. Graphia readily acknowledged that the beam does pose some danger and said that if one does not know it is there he will most probably hit it. Mr. Graphia said he warned Mr. Murry on this occasion. Murry does not deny it, but insists that he heard no warning. It was Graphia’s duty to know that Murry heard it. The fact that Graphia said he ‘wheeled’ around when Murry reached the top, but Murry’s head had already hit the beam and he was falling down the stairs, indicates that Graphia turned to be sure Murry would duck under the beam, but Graphia’s stopping and turning were too late.
“ * * * ”
It was admitted by the defendants that plaintiff was a business invitee. The universally accepted rule of law spells out the duty owed to a business invitee may be stated as found in 65 C.J.S. Negligence § 45b, page 526:
“The owner, occupant, or person in charge of premises owes to invitees or business visitors thereon the duty of exercising reasonable care to keep the premises in a reasonably safe and suitable condition, or of warning invitees or business visitors of hidden or concealed perils of which he knows or should know in the exercise of reasonable care, so that those whom he has invited to enter upon or use his property shall not be unnecessarily or unreasonably exposed to danger.
« * * * ff
In the case of Howard v. Early Chevrolet-Pontiac-Cadillac, Inc., (1963 La.App. *455 2nd Cir.) 150 So.2d 309, at page 313, the court stated:
“The duty owed an invitee includes the use of reasonable care and the discovery of reasonably foreseeable conditions which may be dangerous and result in injury, especially where there is time for the correction of the condition or the giving of warning to the invitee of the danger. (Authorities cited).”
In Levert v. Travelers Indemnity Co. (1963, La.App. 3rd Cir.) 140 So.2d 811, the Court stated on page 813 the duty owed by an owner to an invitee in the following language:
“[3] The duty of an occupier of premises to an invitee is to exercise reasonable or ordinary care for his safety commensurate with the particular circumstances involved. The occupier thus owes a duty to avoid reasonably foreseeable danger to his invitee and to keep his premises safe from hidden dangers in the nature of traps or pitfalls in that they are not known to the invitee and would not be observed and appreciated by him in the exercise of ordinary care. This includes the duty of such unobservable dangerous conditions of the premises, and correction thereof or a warning to the invitee of the danger.”
We find that the defendant Southern knew of the dangerous condition. This is shown by Graphia turning to warn plaintiff that the beam was overhead. This warning, given too late, is equal to no warning at all. We find Southern negligent in permitting this dangerous condition to exist and further, it was negligent in not effectually warning plaintiff of the danger present.
We find that it was reasonably foreseeable that a person ascending these stairs as did this plaintiff and stepping from the stairs to the balcony floor would strike the metal brace. Further, we find, as did' the trial court, that defendant. Southern breached the duty owed plaintiff to provide-a reasonably safe place for him to transact his business.
Therefore, the trial court was correct in applying the law to the facts of this case and in holding that Southern was negligent. It failed to exercise reasonable and ordinary care in not taking the necessary precautions to assure that plaintiff was put on notice of the dangerous location of the metal brace. Plaintiff had not previously traversed that section of the balcony nor had he gained entrance to the balcony previously in this manner. He had no reason to be on notice that the way he was led by Graphia was hazardous or dangerous.
With equal reason and force we hold plaintiff was not guilty of contributory negligence. Plaintiff satisfactorily explained why he felt the need to look with particular attention where he placed his feet as he ascended the stairs, thus explaining logically why he was not looking up the stairs.
Now we pass to the question of damages. Appellants contend that the award of the trial court was excessive. The portion of the award complained of by appellants is the $3,000 awarded plaintiff for physical pain and suffering, mental pain and anguish and permanent disability.
While plaintiff has answered the appeal, neither party complains of the award of special damages of $1901.91. This amount of special damages appears to have been reasonably incurred and adequately proved.
The plaintiff’s injury consisted of an acute dislocation of the right elbow. His physician testified that he has a fifteen per cent permanent disability of the elbow. The elbow was re-set and immobilized in a plaster cast for about a month, then immobilized in an ace bandage. At the time of the trial the elbow still evidenced a thickening of the joint or what is commonly *456 called swelling, and there is present a clicking in the joint. From our appreciation of the injury, period of disability, the pain and suffering endured and the permanent disability, and considering the fact that plaintiff’s ability to do the work of a plumber requires the constant use of his arms and the joints thereof, we find that the trial court’s award is inadequate. We find the plaintiff entitled to an increase in quantum to $4500.
Accordingly, the judgment appealed from is amended, and as amended, affirmed at appellants’ costs.
Amende-d and affirmed.