183 So.2d 347 (1966)
Richard J. COQUILLE and Mrs. Mamie Perrien Coquille, his wife,
v.
EXPRESSWAY BOWLING, INC., and Fireman's Fund Insurance Company.
No. 2090.
Court of Appeal of Louisiana, Fourth Circuit.
February 7, 1966.
Rehearing Denied March 7, 1966.
Writ Refused May 2, 1966.
Clay, Coleman, Dutrey & Thomson, Jacob J. Meyer, New Orleans, for plaintiffs-appellees.
Curtis, Foster & Dillon, Gerard M. Dillon, New Orleans, for defendants-appellants.
Before McBRIDE, YARRUT and HALL, JJ.
McBRIDE, Judge.
On the evening of September 9, 1963, plaintiff-wife slipped and fell while endeavoring to enter the Expressway Bowling Alleys situated in Gretna, Parish of Jefferson, and allegedly sustained physicial injuries; she sues the operator of the bowling alleys and its liability insurer, in *348 solido, for a large amount as damages, and her husband joins in the suit claiming of said defendants the cost of medical expenses, etc., incurred as a result of his wife's injuries. The wife obtained judgment against the defendants for $2500, and the husband recovered judgment for $183. The defendants appealed.
It is alleged that Mrs. Coquille fell as a result of the faulty and inappropriate design of the "ramp" leading to the entrance of the bowling lanes, and that the operator of the premises was guilty of negligence in maintaining a hazardous and dangerous entranceway and in failing to correct the hazards and dangers, knowing that someone might fall as a result thereof.
There are two separate entranceways to the bowling alleys, which are somewhat similar, each consisting of a slightly elevated terrazzo porch, the surface of which is 4 inches above ground level, with an angular or roll-over curb contiguous thereto, the porch being covered by a roof. The curb is said to be the offending agent by the plaintiffs. They incorrectly allege it to be a "ramp." This curb goes completely around the terrazzo porch except that side which is adjacent to and rests against the building. The testimony shows the bottom of the curb to be 5 inches in width along the ground. From our calculation based on the dimensions appearing in the testimony, the slope of the curb is 6½ inches from the top of the porch to the ground, and the surface of the slope constitutes a 40° angle slightly convexed. Thus, a cross section of the curb would show a triangle 4" (perpendicular) × 5" (horizontal) × 6½ (on a 40° angle). One attempting to go upon the terrazzo porch from ground level could certainly step over the curb with a normal tread and without expending a bit more effort than in walking.
Plaintiffs contend that the curb was dangerous and to support their position called as a witness a man engaged in terrazzo construction work who testified that in his opinion the design of the curb was improper as non-abrasive terrazzo was an ingredient which made the surface of the 6½-inch slope slippery and hazardous. The witness did not explain why he reached the latter conclusion, but he undoubtedly meant that if a pedestrian stepped upon the slope, his footing would be insecure.
The purpose of the curb is to facilitate hand trucks carrying supplies for the bowling alleys to be wheeled from the ground level to the porch. The curb was not intended to be used by a pedestrian for the purpose of reaching the porch from the ground as he would only be confronted with a 4-inch step up.
If it be true that because non-abrasive terrazzo had been utilized in the surface of the curb, which circumstance might not be a compliance with present-day architectural standards, this would not be sufficient to say that the premises were defective or that a trap existed. There is no element of a trap, nothing was hidden or concealed which could not have been seen by a person using a minimum of precaution, and we believe Mrs. Coquille has failed to carry the burden of proving that a defect in the premises was solely responsible for her fall and ensuing injuries. The shoes she wore at the time of the accident are in evidence, each being 10 inches long and containing what are denominated "spiked" heels 2½ inches high. Mrs. Coquille testified that upon stepping up to obtain access to the porch, she placed the ball of her left foot on the sloped surface of the curb with the result she slipped and fell. In other words, she tried to place her left foot, which was encased in a shoe 10 inches long with its high spiked heel on a 6½-inch sloped surface. She had visited the bowling lanes previously on at least fifty occasions, and we believe she should have known that the curb was not intended to serve as a step, as no step was necessary to reach the 4-inch elevation of the porch.
*349 The following testimony of Mrs. Coquille is revealing:
"Q. As you were walking in that entranceway on this particular evening that you fell did you see that roll over curb before you stepped on it?
"A. I was walking and I paid no attention, no particular attention. As I say I walked and my foot was there and I proceeded to walk up with my right foot when my left foot went under me. It was there and I assumed it was safe to walk on.
"Q. You didn't see it before you put your foot, or your left foot on it?
"A. No.
"Q. Now, in that area at that entranceway right over that roll over curb it was illuminated with fluorescent lights, wasn't it?
"A. It was lighted, but it wasn't brilliant.
"Q. It was lighted sufficiently so that you could see that roll over curb, wasn't it?
"A. You could see it if you were looking for it down like that (indicating), yes.
"Q. In other words, if you looked down and were watching where you were walking you could have seen it?
"A. Yes. Well, I was just walking casually like anybody."
This explanation given by Mrs. Coquille can but lead the judicial mind to believe that the fall is to be attributed to her own carelessness and inattention and not to any defect in the premises. She did not see the curb because she did not look, and her duty was to look before she stepped. Defendants interposed an alternative plea of contributory negligence.
Storekeepers and property owners are not insurers of the safety of their invitees; they are only under a duty to keep their premises in a safe condition for use in a manner consistent with the purposes thereof, i. e., free of defects or conditions in the nature of hidden dangers, traps or pitfalls which are not known to the invitee and would not be observed by him in the exercise of reasonable care; the invitee assumes the obvious, normal or ordinary risks attendant on the use of the premises, and storekeepers or owners are not liable for injuries to an invitee when those injuries result from a danger which should have been observed by the latter in the exercise of reasonable care. Tete v. Newark Insurance Company, 170 So.2d 248, decided by this court. See also the many cases cited therein. One must see dangers which are obvious and which should and can be appreciated by a reasonably and ordinarily prudent and observant person. It is quite true that one is not required to look for hidden dangers, but he is nevertheless bound to walk with his eyes open and to observe his course and see what is open and apparent. Spinks v. General Fire and Casualty Company, La.App., 175 So.2d 339, and the authorities cited therein.
We must hold in this case that the insignificantly small curb which Mrs. Coquille had to traverse presented not even a remote hazard, but even if we are wrong in this conclusion, then we can only say again we attribute the unfortunate occurrence to Mrs. Coquille's inattention and failure to observe, which amounts to negligence on her part.
For the reasons assigned, the judgment of the trial court is reversed, and it is ordered and decreed that plaintiffs' demands against appellants be and they are hereby dismissed at plaintiffs' costs in both courts.
Reversed.

*350 ON APPLICATION FOR REHEARING
PER CURIAM.
Counsel for plaintiffs in their application for rehearing assert that in eight particulars the record fails to contain any evidence supporting the factual findings made by this court. Each and every fact found by us is either based on evidence in the record or constitutes a matter of common knowledge. For instance, complaint is made of our stated dimensions of a cross section of the curb. Counsel propounded the following Interrogatory No. 21 to Expressway Bowling, Inc. (see Tr. 29):
"State if as of September 9, 1963 there existed as part of the entranceways to said bowling alley roll-over curbs and describe with particular reference to said roll-over curbs:
"A. The composition of the material forming the roll-over curb.
"B. The angle of the curb in relation to the horizontal planes it separates.
"C. Its contour (i.e. convex or concave).
"D. Its length, width and height. Blanda, for said defendant, answered Interrogatory No. 21 as follows (Tr. 34):
"Yes. The roll-over curb was terrazzo. The angle of the curb in relation to the horizontal plane that it separated is unknown. The roll-over curb was convex. It was approximately four inches in height, five inches in width * * * *"
Whereas, Blanda supplied the height and width of the curb we were able, by the use of simple mathematics, to ascertain that the slope of the curb was 6½ inches and constituted a 40° angle.
A rehearing is refused.
Application for rehearing refused.