210 So.2d 901 (1968)
Midas SPIERS et al.
v.
LAKE SHORE ENTERPRISES, INC., et al.
No. 7393.
Court of Appeal of Louisiana, First Circuit.
May 27, 1968.
*902 Robert J. Young, Jr., of Drury, Lozes, Young & Curry, New Orleans, for appellants.
Garie Kenneth Barranger, of Barranger, Barranger & Jones, Covington, for appellees.
Before LANDRY, REID and BAILES, JJ.
LANDRY, Judge.
This is a novel "slip and fall case" in that it presents for the first time, a claim for damages for personal injuries and connected medical expense advanced by the patron of a bowling alley injured in a fall which occurred as she was in the act of bowling. From a judgment in favor of plaintiff, Iretha Bounds Spiers, (for personal injuries) and her husband, Midas Spiers, (for medical expense), defendants Lake Shore Enterprises, Inc. (Lake Shore) and its insurer, American Employers Insurance Company (American), have appealed. Plaintiffs have answered the appeal praying for an increase in quantum awarded Mrs. Spiers. We find the trial court erred in holding defendants liable and reverse the judgment rendered in favor of plaintiff's-appellees.
The accident in question occurred at approximately 3:00 P.M., April 19, 1966, at Lake Shore Bowling Lanes, Slidell, Louisiana, a bowling alley owned and operated by defendant Lake Shore. Mrs. Spiers, a resident of Picayune, Mississippi, accompanied by her sister-in-law and bowling companion, Mrs. Lois Bounds, had driven from Mississippi to Slidell to practice for a tournament scheduled to be held in New Orleans, Louisiana. The trip to Slidell was necessary because the local lanes in Picayune, Mississippi, were closed (presumably for repairs). Mrs. Spiers and her associate arrived at defendant's establishment at approximately 2:00 P.M. and had bowled three games (which took about an hour) before the mishap occurred. The accident happened as plaintiff was attempting a "four way split" which confronted her as the result of her first "roll" or "shot." As we understand the term, it means that after plaintiff's first roll, she left pins standing at the extreme rear of each side of the alley, thus presenting a most difficult second shot or roll. More precisely, plaintiff fell in making her "approach", that is, in advancing toward the foul line preparatory to releasing the ball toward the "pins"; plaintiff's foot "stuck to the floor" throwing her forward into a fall which resulted in a spiral fracture of her right tibia and a transfer fracture of her right fibula.
In urging defendants' liability, plaintiffs contend the approach area involved was unsafe because it was wet or damp; that it was hazardous because it and the entire premises were excessively dirty; and because it contained a number of holes or imperfections known as "chip outs" which caused plaintiff's foot to stick and precipitate her fall. Additionally, plaintiffs advance the ingenious argument that the relationship of patron and owner of a bowling alley is analogous to that of lessor and lessee. On this basis it is contended the rule of strict liability applicable to the landlord-tenant relationship should be invoked in cases of this nature. Plaintiffs do not urge, however, that the proprietor of a bowling alley is the insurer of the safety of his patrons.
Defendants contend the duty incumbent upon the owner of a bowling alley is no different from that of an owner of an ordinary shop, store or establishment of public entertainment or amusement, which is to maintain his premises in reasonably safe condition considering the nature of the business. Appellants further argue that the trial court erred in holding defendant *903 negligent in failing to maintain its premises in a clean and safe condition. Alternatively, defendants maintain Mrs. Spiers was guilty of contributory negligence. In the further alternative, defendants assert the award to Mrs. Spiers for personal injuries is excessive and should be reduced.
In contending the rule of strict liability is applicable herein, plaintiff relies upon Anslem v. Travelers Insurance Company, La.App., 192 So.2d 599, and the numerous authorities therein cited to the effect that the owner-lessor is held to a strict degree of care as regards injuries befalling his tenant through the defective condition of the leased premises. Counsel for appellants reasons that the relationship between the bowling alley proprietor and his patrons is that of lessor and lessee because the price paid for the use of the lane is in effect "rental." The "rental", counsel urges, entitles the patron to exclusive use of a portion of the owner's premises but the fact that the term of such period of exclusive use is of short duration is a matter of no moment. Moreover, according to plaintiff, while the "lease" in the instant case is not of a dwelling or similiar structure, it involves a specific area of a building for a designated purpose. In this regard it is claimed the "lease" in the case at hand is more analogous to the ancient hunting right lease recognized in early Roman Civil Law. In addition, counsel cites Planiol's treatment of the nature of leases wherein Planiol explains that the price in a lease is proportional to the time covered, generally the price being increased as the time is lengthened. In any event the price being calculated by unity of time whether by the hour, month, or year. Planiol Traite Elemenaire de Droit, Volume 2, 1666A(2) No. 1882; Volume 2, 1664(3). Conceding there are no Louisiana authorities dealing with this particular factual situation, counsel for plaintiffs cites cases from other jurisdictions as authority for the proposition that the rule of strict liability applies to the proprietor of a bowling alley.
Viewed in the light of the clearly established jurisprudence of this state, we find no merit in the argument that the relationship between the parties to this action is that of lessor and lessee. While a bowler does in a sense pay a stipulated price for the use of a portion of the owner's premises, the contract between the parties is not analogous to a lease in the generally accepted sense of the word. Generally a lease is a contract wherein one lets to the other a certain space, property or building for a specified unit of time, generally a week, month or year. A bowler does not "rent" a specified space, he pays for the use of a facility when it becomes available as attending circumstances allow. Nor does he pay on a unitary time basis. According to the record in the case at bar, the proprietor charges by the game, not by any specified unit of time. Regardless of the length of the game, the fee or cost per game remains the same.
Our jurisprudence is settled to the effect that storekeepers, shopkeepers and persons who operate places of public business, entertainment and amusement must keep their premises in reasonably safe condition considering the nature of their particular businesses. Robnett v. Great American Insurance Co. of N. Y., La.App., 187 So.2d 152.
Although the owner of such premises is not the insurer of the safety of his patrons, he nevertheless owes his customers or patrons the duty of providing them a safe place in which to shop or carry on the particular type of amusement or entertainment the owner or lessee intends to provide. Lawson v. Continental Southern Lines, Inc., La.App., 176 So.2d 220. In such cases the owner or lessee of the premises is not liable to the patron or customer unless the injury results from the negligence of the former. If the owner or lessee either caused the unsafe condition or permitted it to remain sufficiently long to charge him with constructive knowledge *904 of its existence, he is deemed negligent and therefore liable to the invitee. Provost v. Great Atlantic & Pacific Tea Co., La. App., 154 So.2d 597.
A theatre being a place of public entertainment or amusement, patrons thereof are invitees to whom the operator owes the duty of keeping such premises in reasonably safe condition. Cassanova v. Paramount-Richards Theatres, 204 La. 813, 16 So.2d 444; Boucher v. Paramount-Richards Theatres, La.App., 30 So.2d 211. We can conceive of no reason why the patron of a bowling alley should be accorded any greater legal right than one who purchases a theatre ticket. Nor do we detect any reason why one who visits a bowling alley should be deemed a lessee or tenant of the owner or operator any more than the holder of a theatre ticket should be regarded as the lessee or tenant of the particular seat to which the latter may be entitled even when the ticket he holds calls for a reserved seat.
Upon reading each of the foreign authorities cited by plaintiffs, in which the liability of a bowling alley proprietor was concerned, we find that the courts of our sister states have in effect applied the same rule recognized in this state with respect to shopkeepers and owners of places of entertainment and amusement. In Shipman v. Foisy, 49 Wash.2d 406, 302 P.2d 480, the Supreme Court of Washington affirmed the finding of the trial court to the effect that the defendant had either actual or constructive knowledge of the defect which caused plaintiff's injury and the further finding that plaintiff was not guilty of contributory negligence.
In Paskil v. Leigh Rich Corporation, 171 Cal.App.2d 488, 340 P.2d 741, the court affirmed the action of the trial court in granting a new trial because it erroneously instructed the jury regarding the issue of "unavoidable accident."
Akridge v. Park Bowling Center, 240 Ark. 538, 401 S.W.2d 204, involved a case in which the trial court sustained defendant's motion for summary judgment on the ground plaintiff had not shown the exact cause of her fall. In reversing, the Supreme Court of Arkansas held the allegations of the petition sufficient to state a cause of action considering it alleged certain acts on defendant's part which, if true, constituted negligence.
We think it suffices to state that in the remaining cases cited by plaintiff, the courts, under one circumstance or another, recognized and applied the rule that negligence on the part of the operator of a bowling alley is essential to recovery by a patron who falls while on the premises. In no instance was the rule of strict liability mentioned or applied.
The question therefore, in this as in any other slip and fall case, is basically one of fact. Was the owner or operator negligent in causing the condition which resulted in the fall or was he remiss in not timely discovering and eliminating a hazard or danger created by a patron or invitee?
Mrs. Spiers, a bowler with some 18 years experience, testified she had fallen on only one prior occasion and then because the soles of her bowling shoes had become wet. On the afternoon in question, she and Mrs. Bounds had been bowling on lane one. They had bowled three games before the accident occurred. Mrs. Spiers never left the alley to go either to the rest room or refreshment stand during the first three games which took from one to one and one-half hours. She noticed that the building was generally very dirty although she did not observe any foreign matter on the surface of the approach area of lane one. When she commenced bowling she noted that the approach area of lane one was damp because her feet were "sticking." She did not, however, touch the boards in the approach area, neither did she observe moisture on the floor. During the entire first three games she had used the center of the approach area but, because the "four way split" developed during the *905 fourth game, she moved to the left side of the approach area as she could best play the shot from that position. As she neared the foul line from the left side of the approach area, her foot stuck to the floor and she fell on her right leg. Mrs. Spiers did not recall stepping on or into anything which may have caused her foot to stick; she was unable, because of pain, to inspect the area after her fall. Finally, she stated she never called the damp condition of the approach area to the management's attention because the only person she saw in attendance was a small boy behind the control counter.
Mrs. Lois Bounds testified she had almost fallen while using the left side of the alley during the first three games. When this near mishap occurred, she noticed that a corner of one of the floor boards appeared chipped in several places. She could not state how deep the chipped places were as she did not feel them or examine them closely. She also stated the floor of the building was generally dirty but could not say whether the approach area was dirty as she did not inspect it. Mrs. Bounds did not notice any water or other foreign substance on the approach area of lane one and she could not say the floor was damp as she did not touch it with her hands.
Mrs. Winona Weinmann and Mrs. Bonnie Shoemaker, acquaintances of Mrs. Spiers and Mrs. Bounds, were bowling in adjacent alleys. In substance both ladies testified the bowling alley was dirty. When Mrs. Spiers fell, they both went to her aid. Neither witness looked to see if there was any foreign substance on the floor at or near the spot where the accident happened. Mrs. Weinmann stated, however, that she experienced some "sticking" on the lane she and Mrs. Shoemaker were using to the extent that her "slide" was somewhat impeded.
Mrs. Elizabeth Guidry, an employee of Lake Shore testified she was on duty but temporarily absent from the alley at the time plaintiff fell. Mrs. Guidry returned shortly after plaintiff left the premises in an ambulance. She testified that she examined the approach to alley number one by rubbing her hands over the surface. She found it neither damp nor sticky nor did she observe any foreign object or dampness. She found some dust on the surface but no more than usual. She also testified that a ladies league had used the lanes that morning and there had been no complaints of the floor being sticky or damp.
Mr. James Payton, employed by Lake Shore in the capacity of porter, testified that upon opening the establishment that morning he had cleaned the entire place. When league play ended at about 11:30 A.M., he dusted the approaches to all the alleys as was his usual custom. During the morning he received no complaints of any approach area being sticky. In cleaning the approaches he used a buffer only; he never applied wax or any cleaning fluid to these surfaces. Although he did not see Mrs. Spiers fall, he went to the accident scene before Mrs. Spiers was removed. He examined the surface of the approach area and found no foreign substance, neither did he detect any sign of dampness.
Mr. Wade Shipley, secretary of Lake Shore, testified he was informed of the accident several days after it occurred. He then examined lane one and found it in good condition. His inspection of lane one did not reveal any chip outs. He conceded it would not be uncommon to find some chip outs in alleys but that they would not constitute defects or hazards.
Mr. Gerald R. Matherne, professional bowler and lanes operator, testified that he inspected the slide area of the approach of alley number one on March 28, 1967 (almost one year following the accident). He explained that the slide area is normally that area from 18 inches to three feet back of the foul line. His inspection disclosed this entire area to be in good condition. He noted some chip outs in the boards but not of such nature as would constitute a hazard or cause a bowler to trip or fall. *906 He explained further that a bowler's foot slides naturally over such chip outs unless the floor boards have become loosened and raised. He found no boards loose or raised and neither did he detect any nails protruding above the surface. Mr. Matherne was of the opinion that the presence of dust on the floor, as distinguished from moisture, would aid rather than hinder a bowler's slide. In effect his examination disclosed lane one to be in good condition and to present no hazard or danger to a bowler.
It is well settled in our jurisprudence that in cases of this character plaintiff must establish his claim by a preponderance of evidence. Allen v. Honeycutt, La.App., 171 So.2d 770.
Plaintiffs' contention that Mrs. Spiers fell because the floor was wet or damp thus causing her foot to stick rather than slide is not established to any degree whatsoever. Mrs. Spiers' testimony was to the effect that she thought the floor was damp or wet but admittedly she never at any time touched or examined the surface. Mrs. Guidry and James Payton, however, both closely examined the area after plaintiff fell. Neither of said parties observed any evidence whatsoever of dampness. Although both Mrs. Weinmann and Mrs. Shoemaker noted some evidence of sticking in their lane, neither attributed this circumstance to dampness or moisture. In addition, a Mr. Broussard, bowling in yet another lane, testified he experienced no difficulty in his approach area due to dampness. Finally, plaintiff points to the testimony of Phillip Salvaggio, manager of Lake Shore since August, 1966. Mr. Salvaggio testified that in either December, 1966 or January, 1967, he noted what appeared to be dried moisture spots on the surface of the approach to lane one. He attributed this condition to condensation on the ceiling. He removed the spots from the floor and placed two rags on the ceiling to absorb the condensation and has never again experienced any difficulty from this source. It is significant that the spots mentioned by Mr. Salvaggio did not appear until several months after Mrs. Spiers' accident. That they occurred subsequently does not necessarily indicate the same condition existed in April, 1966.
Nor does the evidence proffered support plaintiffs' contention the floor was dangerous due to the presence of "chip outs." In this regard Mrs. Bounds testified that while bowling the first three games she became aware of these "chip outs" or holes in the floor in the left side of lane one when she herself almost fell. Neither Mrs. Spiers nor Mrs. Bounds could estimate the depth of these chip outs. On the contrary, Mr. Matherne testified that the condition he found months later was such that a bowler would slide over these chip outs without difficulty. The substance of his testimony was that the condition found was usual and ordinary in bowling alleys and was not such as to cause a bowler to trip or fall.
Lastly, plaintiffs argue that the unclean condition of the floor, as evidenced by the state of Mrs. Spiers' shoes following the accident, was a contributing factor to the accident. According to the testimony, the shoes were given to Mrs. Bounds following the accident. Mrs. Bounds kept the shoes in the same state in which they were received. She described them as being very dirty. On this basis it is contended that the excessive dirt picked up by Mrs. Spiers, together with the chip outs in the floor, caused the accident. While plaintiffs' witnesses testified to the unclean condition of the premises in general terms, none were specific in mentioning the type of debris present nor did they locate the dirt and trash with relation to the areas in which they bowled or moved about. No witness testified that the approaches to the lanes were soiled or contained any foreign matter or substance. If Mrs. Spiers accumulated the dirt on her shoes in defendant's establishment, she must have done so on the approach area as she stated positively that at no time did she leave the vicinity of lane one to go any place else in the building. *907 If this be so, it can only be argued that she accumulated the soil in either the "pit" or approach area. However, the weight of the evidence is to the effect that these portions of the premises were free of dirt or refuse.
The conclusions herein reached obviate the necessity of considering defendants' alternative plea of contributory negligence.
For the reasons hereinabove set forth, it is ordered, adjudged and decreed that the judgment of the trial court in favor of plaintiffs Midas Spiers and Iretha Bounds Spiers against defendants Lake Shore Enterprises, Inc. and American Employers Insurance Company be and the same is hereby annulled, reversed and set aside and judgment rendered herein rejecting said plaintiffs' demands at plaintiffs' cost.
Reversed and rendered.