223 So.2d 441 (1969)
Ena Marie CHAUVIN, Plaintiff and Appellee,
v.
UNITED STATES FIDELITY & GUARANTY CO., et al., Defendants and Appellants.
No. 2647.
Court of Appeal of Louisiana, Third Circuit.
May 22, 1969.
Rehearing Denied June 18, 1969.
*443 Davidson, Meaux, Onebane & Donohoe, by Timothy J. McNamara, Lafayette, for defendants-appellants.
Koury & Judice, by Joseph A. Koury, Lafayette, for plaintiff-appellee.
Before TATE, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
Plaintiff, Mrs. Ena Marie Chauvin, claims damages for personal injuries sustained by her when she tripped and fell while on premises which were being used by Howard Reed for the operation of a business. The defendants are Reed and his liability insurer, United States Fidelity & Guaranty Company. The case was tried by jury, with the result that a verdict was rendered in favor of plaintiff for $4,000. A decree was signed by the trial judge in accordance with the verdict, and defendants have appealed. Plaintiff has answered the appeal praying that the amount of the award be increased.
The principal questions presented on this appeal are: (1) Was defendant Reed negligent in failing to maintain his business premises in a safe condition for invitees? and (2) Was plaintiff guilty of contributory negligence in failing to see the object over which she tripped, thus barring her from recovery?
The accident occurred about noon on February 9, 1966, in Lafayette, Louisiana, on property which had been leased to defendant Reed, and which was being used by Reed for the operation of a "Dairy Queen" business. The owner-lessor of the property is not a party to this suit. The Dairy Queen is a "drive-in" type business where food, beverages and ice cream are the principal commodities sold. The property which had been leased to defendant Reed, and on which this business was located, consisted of a relatively small building, about 18 feet wide by 30 feet deep, and a parking lot which practically surrounded the building. The building faced in a southwesterly direction on University Avenue.
There were no facilities for serving customers inside the building. Instead, the building was equipped with three service windows, through which customers standing on the outside of the building at these windows could be served. Two of these service windows were located at the front of the building, and the third such window was located on the southeast side of it.
An iron railing, about 24 inches high, had been installed across and parallel to the front of the building, the purpose of that railing being to prevent automobiles from being driven or parked too close to the building itself. The railing was about six feet from the front of the building, and a concrete walkway, about six feet wide, ran between the front of the building and this railing. There was a break or an opening in the iron railing directly in front of the building, which opening permitted customers approaching the building from the front to walk to either of the two front serving windows without having to step over the railing. The distance from the center of this opening in the iron railing to *444 either side of the building was about nine feet.
Immediately before this accident occurred Mrs. Chauvin approached the front of the building and walked through the above described opening in the iron railing. She entered through this opening, turned to her right and walked in a southeasterly direction, on the six foot wide walkway which ran between the building and the railing, to a point about even with the east side, or the right front corner, of the building. At that point she tripped and fell over a "door", or a decorative piece of lumber, which had fallen from its upright position and was lying across her path. She contends that she sustained injuries as a result of that fall, and in this suit she claims damages for those injuries.
The object on which plaintiff tripped resembled a barn door. It was eight feet long, three feet wide and about three inches thick. The border around the outside edges of the door, and several cross pieces on it, were painted red, while the rest of the door was painted white.
Prior to the occurrence of this accident, this door had been used as a decorative piece on the building. It had been installed originally in an upright position at the right front corner of that structure, and two other doors like it had been installed on other corners of the edifice. All of these decorative doors were fastened to the building with metal straps and screws. Shortly before this accident occurred the decorative door at the right front corner of the building fell from its upright position, and it came to rest flat on the concrete walkway, extending from that corner of the building across what would have been an extension of the six foot passageway. After it had fallen, it blocked the end of that passageway to the extent that a person endeavoring to walk in a southeasterly direction on that passageway would have to step on or over the door in order to proceed beyond the right front corner of the building. The door, as it lay across the concrete passageway, extended about four inches above the surface of the concrete.
Mrs. Chauvin testified that she went to the Dairy Queen to buy an ice cream cone. She stated that when she walked through the opening in the iron railing immediately before the accident occurred, she saw a number of customers standing at the front service window which was located to her left. She felt that she would have difficulty getting waited on at that window, so she turned to her right and she proceeded to walk in a southeasterly direction on the six-foot passageway between the building and the iron railing, her purpose being to walk past the right serving window and to go around the front corner of the building to the side window where she hoped to be served sooner. She testified that she did not see the decorative door as it lay across the passageway, and that when she reached it she tripped on it and fell.
One of the reasons given by plaintiff for her failure to see the door over which she tripped is that the place was very crowded with people, who obstructed her view of the door itself and whose presence distracted her. Hence, an important factual issue is the number of people on the premises and the positions in which they were sitting or standing.
The evidence shows that, generally speaking, the place was crowded. The accident occurred during the noon hour, when this Dairy Queen usually does a large business. Many cars were parked in the parking area. A few people were seated along the rail across the front of the building. Customers were lined up at the window on the left, facing the front of the building, and standing in the passageway near the center.
Defendant makes much of confusion in plaintiff's testimony as to whether there were any customers standing at the service window on the right, who would have obstructed plaintiff's view of the door lying *445 across the passageway. In her pretrial deposition, as well as her testimony at the trial under cross-examination, plaintiff stated that no one was standing at the window on the right. Hence, for purposes of our decision we will assume this was true. However, plaintiff's general description was that the place was crowded and she had to pass through these customers to reach this "ice cream window" on the side. She testified clearly that there were two men seated on the rail in front of the window on the right. These two men had their feet extended. There was a space of only 5.3 feet between the rail and the service counter which extended out from the building, which means that plaintiff had a space of about three feet through which to pass.
When asked why she did not see the door across her path, plaintiff stated: "I was just too busy looking at the window more than anything else." At other points she said: "I wasn't looking down"; and that she "wasn't expecting it"; and further that "there were too many people around to distract me"; and "I wanted to just go there and go home right away"; and "I had my mind on if I should get served at that window or the other window"; and "I wasn't watching to see a door and I wasn't expecting to see a door" and that she was "thinking about the crowd and many other things."
Now turning to the law, we have little difficulty in concluding that the defendant storekeeper was negligent. The storekeeper is not an insurer of the safety of his customers, his duty being to exercise reasonable care for their safety. However, the duty to use reasonable care is a full one, extending to every hazard which creates an unreasonable risk of foreseeable harm to his business invitees. This duty includes that of inspecting the premises for defects and warning of perils which the customers may not see through the exercise of ordinary care. Consideration must be given to the nature of the premises and the business purpose for which it is used. Peters v. Great Atlantic & Pacific Tea Company, La.App., 72 So.2d 562; Pilie v. National Food Stores of Louisiana, Inc., 245 La. 276, 158 So.2d 162 (1963); Alexander v. General Accident Fire & Life Insurance Corp., La.App., 98 So.2d 730; Prosser, Law of Torts, 3d. Ed., 401-405.
In the present case there was a defective condition of the premises. The door had apparently been blown down by the wind before this accident occurred and was allowed to remain there as an obstruction to passage along the front of the building. The trial judge was no doubt impressed by the fact that on this issue defendant called only the owner of the business, and did not call any employees who were on duty that day, although it was made clear that at least one of them was readily available to testify. The owner testified that he inspected the premises while cleaning the lot about 10 a. m. and saw that the door was in place when he served a customer about 11 o'clock; that he did not know that the door had fallen until after the accident; that he was busy cooking and assembling sandwiches at the time and that everyone else was busy serving customers. Defendant explained that heavy winds probably blew the door down but was unable to give any time when this occurred. While he testified that this happened a few seconds before plaintiff fell, it was obvious that he knew nothing about the door from the time he last saw it about 11 o'clock until after the accident occurred. Considering the crowds which frequently used this passageway and the fact that the attention of customers would be distracted by the crowd, as well as by the advertising on the front of the building, (as shown by the pictures in evidence) such an obstruction across the passageway created an unreasonable risk of foreseeable harm to business invitees. We hold that defendant's insured or his employees were negligent in failing to hear the noise which must have occurred at the fall of this large heavy door and/or failing to see this door *446 fall, and/or failing to observe that the door was no longer positioned between two of the three serving windows at this busy time of the day. Furthermore, they were negligent in failing to remove the hazard or warn patrons of this hazardous condition.
The more serious issue is whether plaintiff was contributorily negligent. This is a close question, but we have decided ultimately there is no manifest error by the jury in concluding that Mrs. Chauvin was free of negligence.
In the context of the present case, contributory negligence is conduct which, under the circumstances, falls below the standard of the duty required of everyone to protect his own safety. Levert v. Travelers Indemnity Company, La.App., 140 So. 2d 811, 813. It is an affirmative defense which the pleader must prove by a preponderance of the evidence. Daire v. Southern Farm Bureau Casualty Insurance Company, La.App., 143 So.2d 389. In the Levert case, supra, we said "the invitee assumes all normally observable or ordinary risks attendant upon the use of the premises." (emphasis supplied)
Particularly applicable here are several cases in which invitees were found free of negligence in failing to see obstructions to their passage. In the recent case of Foggin v. General Guaranty Insurance Company, 250 La. 347, 195 So.2d 636, 641 (1967) a plank was nailed across the bottom of a gateway, extending 6 to 8 inches above the ground. The evidence showed that the host had opened the gate and waited for her guest to proceed through it. The court held:
"However, under the conditions herein, Mrs. Josephine Foggin reasonably assumed that she could walk through the gateway safely; she could not have been expected to assume that the board was at the bottom of the gateway. The instant dangerthe boardwas not such, under the facts found, as could and should have been discovered by Mrs. Foggin."
There are several cases which recognize that one of the factors to be considered is whether the customer's attention was distracted by inspecting such things as advertising or merchandise along the passageways. Provost v. Great Atlantic & Pacific Tea Company, La.App., 154 So.2d 597; Guy v. Kroger Company, La. App., 204 So.2d 790. Another factor to be considered is whether the customer's attention was distracted by the crowded condition of the premises. Of course, the nature of the obstacle is always a factor in determining whether it should have been expected. For instance, a step is such a common thing in a building that a customer is required to see it, Magoni v. Wells, La.App., 154 So.2d 524, but there is a lesser duty by the invitee to observe unusual obstructions. As a general rule, a customer can rely on the passageway being reasonably safe and does not have to observe floor conditions before taking each step, Dever v. George Theriot's Inc., La.App., 159 So.2d 602; Murry v. Boston Insurance Company, La.App., 178 So.2d 452.
Applying these general principles to the facts of the present case, we find no manifest error in the jury's conclusion that plaintiff was free of contributory negligence. Her testimony shows that she had visited the premises many times in the past, when the obstructing door was not in the passageway. It was an unexpected and unusual obstruction. Her attention was distracted by the crowd. As she entered the rail and turned to her right, her view of the door was at least partially obstructed by the two men sitting on the rail. There was a narrow space, about three feet, between the extended feet of the men sitting on the rail and the front of the building. After she turned to the right, she walked only about six feet through this narrow space and during this time she did not look down at the floor. She says the principal reason she did not look down was that she was looking toward the window where the waitress was waiting to serve her an ice cream cone. She wanted to get *447 ahead of the crowd and get served and go home. Under all of the circumstances, we think it is not unreasonable that she did not observe the floor as she took each step and thus failed to see this unusual obstruction.
The final issue is quantum. The evidence shows that plaintiff, 59 years of age, suffered a lumbosacral sprain and a bruise of the left chest. There is a dispute as to whether she also suffered an aggravation of a preexisting prolapse of the colostomy, a condition in which, due to cancer or other disease, the anus has been surgically closed and the large intestine opened through another opening. The abnormal protrusion of the bowel through this new opening is a "prolapse."
Plaintiff was never hospitalized nor treated with traction nor braces. Treatment consisted of bed rest at home, and drugs. Eight months after the accident she was discharged as recovered from all symptoms of the lumbar sprain and the bruise to the chest.
There is a dispute as to whether the prolapse of the colostomy, which preexisted the accident, was aggravated by it. Without detailing this evidence, we think it is clear the jury could reasonably have concluded there was no such aggravation.
Under the circumstances, we find no abuse of discretion in the jury's award of $4,000. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149; Ballard v. National Indemnity Company of Omaha, Nebraska, 246 La. 963, 169 So.2d 64.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant appellant.
Affirmed.
HOOD, Judge (dissenting).
I am unable to concur in the judgment which is being rendered by the majority in this case.
In the first place, I think my colleagues have erred in holding that the defendant storekeeper was negligent. Secondly, even if the storekeeper should be held to have been negligent in any respect, I feel that Mrs. Chauvin must be held to have been negligent also, and that she thus is barred from recovery by her own contributory negligence.
Our law is settled that the proprietor of a store must exercise ordinary care to keep the aisles, passageways, floors and walks of the store in a reasonably safe condition for his customers. The law, however, does not make the storekeeper the insurer of the safety of persons properly on his premises, and his liability for injuries sustained by a customer who falls while on those premises does not arise unless the plaintiff establishes that the injury was caused by the proprietor's negligence. The storekeeper will not be held to have been negligent, and thus liable for injuries sustained by an invitee who stumbles over an unexpected object on the floor of the premises, unless the evidence establishes: (1) That the storekeeper was aware of the dangerous condition before the accident occurred; or (2) that by the exercise of reasonable care he should have discovered it and thereafter failed to exercise reasonable diligence in an effort to remove the danger or to warn the customer of it. Provost v. Great Atlantic & Pacific Tea Company, 154 So.2d 597 (La.App. 3d Cir. 1963); St. Romain v. Burger Chef Systems, Inc., 211 So.2d 686 (La.App. 4th Cir. 1968); Peters v. Great Atlantic & Pacific Tea Co., 72 So.2d 562 (La.App. 2d Cir. 1954); Callais v. Furniture Showrooms, Inc., 213 So.2d 537 (La. App. 1st Cir. 1968); Spiers v. Lake Shore Enterprises, Inc., 210 So.2d 901 (La.App. 1st Cir. 1968); Kauffmann v. Royal Orleans, Inc., 216 So.2d 394 (La.App. 4th Cir. 1968); Robnett v. Great American Insurance Company of New York, 187 So.2d 152 (La.App. 2d Cir. 1966); Cannon v. Great Atlantic & Pacific Tea Company, 146 So. 2d 804 (La.App. 3d Cir. 1963).
*448 In Provost v. Great Atlantic & Pacific Tea Company, supra, we said:
"Although the law imposes a duty of reasonable care toward the invitee, it does not make the storekeeper the insurer of the safety of persons properly on the premises, and his liability does not arise unless and until it is established that the injury or loss was caused by his negligence. The storekeeper will be held liable if he is aware of, or by the exercise of reasonable care should have discovered, the existence of an object projecting into the aisle which exposes patrons to danger and thereafter he fails to remove the danger or to warn the customer of it." (Emphasis added.)
Our brothers of the Fourth Circuit Court of Appeal, in St. Romain v. Burger Chef Systems, Inc., supra, held that:
"To maintain a cause of action against the owner of a store for injuries resulting from a fall on the premises, plaintiff must show by a clear preponderance of the evidence that: (1) A dangerous condition existed at the point where the fall occurred, i. e., some foreign substance was present to account for the fall; (2) that the dangerous condition or foreign substance caused the fall; (3) that the storekeeper was negligent in allowing the dangerous condition to exist; and (4) that the storekeeper had actual or constructive knowledge of the dangerous condition." (Emphasis added.)
In Peters v. Great Atlantic & Pacific Tea Company, supra, the plaintiff allegedly slipped on a bean which had fallen on the floor of defendant's grocery store. The Second Circuit Court of Appeal, affirming the trial court, found that the storekeeper was not negligent because plaintiff had "failed to prove that the bean remained on the floor for such a period of time that it became the duty of the defendant to notice and remove it from the floor." The duty which the storekeeper owed to his customers was correctly stated by the court as follows:
"He must exercise the degree of care that would be exercised by an ordinary prudent man under similar circumstances * * *"
"His liability arises only when injuries are caused by his negligence; Bishop v. F. W. Woolworth & Co., La.App.1942, 8 So.2d 701, and not as a result of an extraneous object in the store or upon the floor unless the object was dangerous and allowed to remain a source of danger for a longer period of time than that in which it should have been discovered and removed. Joynes v. Valloft & Dreaux, Inc., La.App.1941, 1 So.2d 108." (Emphasis added.)
In Callais v. Furniture Showrooms, Inc., supra, the First Circuit Court of Appeal said: "If the storekeeper was aware, or by the exercise of ordinary and reasonable care should have been aware, of the hazard or peril, he will be deemed negligent and consequently liable for the patron's injuries."
And, the rule was stated by the Second Circuit Court of Appeal in Spiers v. Lake Shore Enterprises, Inc., supra, as follows:
"In such cases the owner or lessee of the premises is not liable to the patron or customer unless the injury results from the negligence of the former. If the owner of lessee either caused the unsafe condition or permitted it to remain sufficiently long to charge him with constructive knowledge of its existence, he is deemed negligent and therefore liable to the invitee." (Emphasis added.)
The cited cases, and many others which could be listed, establish the rule of law that the proprietor of a store is not liable for injuries sustained by an invitee who stumbles and falls on the premises, unless the plaintiff proves that the storekeeper was aware of the hazard, or that by the *449 exercise of reasonable care he should have discovered it before the accident occurred, and thereafter he failed to exercise reasonable diligence to remove the danger or to warn the invitee of it.
In the instant suit plaintiff has failed to meet this burden of proof. She not only has failed to prove these essential facts, but the evidence establishes affirmatively that those circumstances, essential to her case, did not exist. The proof shows, without any contradiction at all, that the decorative door was blown down by a high wind just moments before the accident occurred. The defendant proprietor was completely unaware of the fact that it had been blown down before plaintiff stumbled over it, and the so-called hazardous condition (that is, the door laying across the passageway) had not existed long enough to reasonably enable the proprietor to discover or to remove that danger. The testimony of defendant Reed that the door could not have been blown down more than "a matter of seconds" before the accident occurred is uncontradicted. Not a single witness disputed that statement.
The evidence shows that the door had been securely fastened to the building with metal straps and screws, that the wooden portion of the door was sound and was not rotten, and that there was no defect in the materials which were used or in the manner in which it had been fastened. Plaintiff does not contend, and the majority has not found, that the proprietor was negligent in having failed to determine before the accident that the door could be blown down by a high wind.
My colleagues have found that the storekeeper, Reed, was not aware of the fact that the door had blown down before the accident occurred. They have held, in fact, that "he knew nothing about the door from the time he last saw it about 11 o'clock until after the accident occurred." The only remaining ground on which they could find him negligent, therefore, is upon proof that the door had remained on the concrete passageway long enough for him, by the exercise of reasonable care, to have discovered it and to have removed it or warned the customers of the danger before the accident occurred. The majority has not found, and I submit that they cannot justifiably do so, that the door had remained in its fallen position long enough for Reed reasonably to have discovered and moved it before Mrs. Chauvin sustained her fall.
The majority states that "The door had apparently been blown down by the wind before this accident occurred and was allowed to remain there as an obstruction * * *" They then suggest that "the trial judge was no doubt impressed by the fact that on this issue defendant * * * did not call any employees who were on duty that day." No further reference is made to the fact that the employees were not called as witnesses, and nothing is mentioned in the opinion about drawing an inference from that circumstance. Actually, the factual determinations were made by a jurynot by a judge. But, no inference of any kind could legally be drawn by a judge or jury from the failure of defendants to call these witnesses, because the evidence shows that three of the four employees who were present at that time are no longer employed by defendant, and they were as available to plaintiff as they were to defendants.
Of more importance, however, is the fact that the majority does not find that the door had remained across the passage way long enough for Reed to have discovered or to have removed it. They hold instead, and without determining how long the door had been there, that the storekeeper was negligent in failing to "hear" or to "see" the door fall, and in failing to remove it or warn patrons of the danger.
I think the conclusion reached by the majority in this instance is in direct conflict with the above cited jurisprudence. Under our settled law the storekeeper is not negligent, and thus is not liable for *450 damages to an invitee who stumbles and falls over an object on the floor of the premises unless he was aware of the danger before the accident occurred, or unless the dangerous condition had existed long enough for him to have discovered and removed it. Here, neither of the last two conditions existed.
Assuming, however, that defendant was negligent, I think the evidence shows clearly that Mrs. Chauvin was guilty of contributory negligence.
Storekeepers and property owners are not insurers of the safety of their invitees. They, however, are under a duty to keep their premises in a safe condition for use in a manner consistent with the purposes thereof, that is, free from defects or conditions in the nature of hidden dangers, traps or pitfalls which are not known to the invitee and would not be observed by him in the exercise of reasonable care. Coquille v. Expressway Bowling, Inc., 183 So.2d 347 (La.App. 4th Cir.1966); Tete v. Newark Insurance Company, 170 So.2d 248 (La.App. 4th Cir.1965); Meek v. Travelers Insurance Company, 188 So.2d 677 (La. App. 4th Cir.1966); Boubede v. Casualty Reciprocal Exchange, 209 So.2d 82, 83 (La.App. 4th Cir.1968).
The invitee assumes the ordinary, normal and obvious risk involved in the use of the storekeeper's premises, and the storekeeper or owner is not liable for injuries sustained by the invitee when those injuries result from a danger which should have been observed by the exercise of reasonable care. The invitee is held to have seen dangers which are obvious and which should and could be appreciated by a reasonably prudent and observant person. He is not required to look for hidden dangers, but he is bound to walk with his eyes open, to observe the course which he is pursuing, and to see and be guided by what is readily apparent to him. Meek v. Travelers Ins. Co., supra; Boubede v. Casualty Reciprocal Exchange, supra; Coquille v. Expressway Bowling, Inc., supra; Spinks v. General Fire and Casualty Co., New York, 175 So.2d 339 (La.App.2d Cir.1965); Tete v. Newark Ins. Co., supra; Mallet v. Travelers Ins. Co., 164 So.2d 593 (La.App.3d Cir.1964); Kramer v. Etie, 155 So.2d 478 (La.App.3d Cir.1963).
In Coquille v. Expressway Bowling, Inc., supra, plaintiff was not permitted to recover because of her own contributory negligence in tripping over a four-inch curb in a parking lot. Our brothers of the Fourth Circuit Court of Appeal said:
"Storekeepers and property owners are not insurers of the safety of their invitees; they are only under a duty to keep their premises in a safe condition for use in a manner consistent with the purposes thereof, i. e., free of defects or conditions in the nature of hidden dangers, traps or pitfalls which are not known to the invitee and would not be observed by him in the exercise of reasonable care; the invitee assumes the obvious, normal or ordinary risks attendant on the use of the premises, and storekeepers or owners are not liable for injuries to an invitee when those injuries result from a danger which should have been observed by the latter in the exercise of reasonable care. Tete v. Newark Insurance Company, 170 So.2d 248, decided by this court. See also the many cases cited therein. One must see dangers which are obvious and which should and can be appreciated by a reasonably and ordinarily prudent and observant person. It is quite true that one is not required to look for hidden dangers, but he is nevertheless bound to walk with his eyes open and to observe his course and see what is open and apparent. Spinks v. General Fire and Casualty Company, La.App., 175 So.2d 339, and the authorities cited therein." (Emphasis added.)
"We must hold in this case that the insignificantly small curb which Mrs. Coquille had to traverse presented not even a remote hazard, but even if we are wrong in this conclusion, then we can *451 only say again we attribute the unfortunate occurrence to Mrs. Coquille's inattention and failure to observe, which amounts to negligence on her part."
In Spinks v. General Fire and Casualty Company, N. Y., supra, the plaintiff tripped and fell over a mechanic's creeper, which protruded about 20 inches from under an automobile. The Court of Appeal, Second Circuit, said in that case:
"The principle is well established that one must see dangers which are obvious and which can be appreciated by a reasonable and ordinarily prudent person. * * * While one is not required to look for hidden dangers, he is nevertheless bound to walk with his eyes open and to observe his course to see what is open and apparent. * * * Thus, one may not recover if injury is caused by a failure to see a danger which would have been apparent to a reasonably prudent and observant person." (Emphasis added.)
And, in Tete v. Newark Insurance Company, supra, the court appropriately said:
"Storekeepers and property owners are not insurers of the safety of their invitees; they are only under a duty to keep their premises in a safe condition for use in a manner consistent with the purposes thereof, i. e., free of defects or conditions in the nature of hidden dangers, traps or pitfalls which are not known to the invitee and would not be observed by him in the exercise of reasonable care; the invitee assumes the obvious, normal or ordinary risks attendant on the use of the premises and storekeepers or owners are not liable for injuries to an invitee when those injuries result from a danger which should have been observed by the latter in the exercise of reasonable care. * * *"
"There is no fixed rule for determining whether or not a defect in the premises is dangerous or in the nature of a trap; the facts and surrounding circumstances of each particular case control. White v. City of Alexandria, 216 La. 308, 43 So.2d 618; see St. Paul v. Mackenroth, supra". [246 La. 425, 165 So.2d 273].
The door over which plaintiff stumbled in the instant suit was painted with very bright colors. The red paint used on the borders and on the cross pieces was a brilliant, fiery red, and the rest of the door was painted a glistening white. The door was introduced in evidence, and it had the appearance of having been freshly painted, with the bright red and white colors standing out very vividly. It is inconceivable that plaintiff did not notice such a brightly colored object laying directly in her path, in broad daylight, on the dull colored concrete passageway. She would have seen it if she had exercised even the slightest degree of care as she hurried to the side window of the building. In my opinion the door did not constitute a "hidden danger, trap or pitfall which would not be observed by plaintiff in the exercise of reasonable care."
My colleagues conclude, as they must, that no one was standing in plaintiff's path as she walked the distance of about nine feet along the passageway in front of the building to the point where the accident occurred. The only "obstruction" to her vision as she walked that distance were the feet of two men who were sitting on the iron railing which ran along the front of the building. But, the majority concedes that in spite of the feet of these two men plaintiff had a space of at least three feet in the passageway through which to walk, and I think that was adequate to enable her to see the brightly painted red and white door which lay in her path.
Mrs. Chauvin, however, does not contend that her view of the door was obstructed. She offers as her excuse for failing to see the door, and for failing to step up about four inches to walk over it, that she was "just too busy looking at the window," that she "wasn't looking down," that she "wasn't expecting it," that there were "too many people around to distract me," that *452 she had her mind on getting served at the side window, that she wanted "to get away from there fast * * * because I wanted to go back home," and that she "wanted to just go there and go home right away."
The majority has noted that the place was "crowded" and that plaintiff's attention was "distracted by the crowd." It is true that there were many people in that area, but plaintiff makes it clear in her testimony that she meant that there were many cars in the parking lot and that there were a number of people at the front serving window which was to her left as she approached the building. She turned to her right when she reached the passageway in front of the building, however, and there was no one in that part of the passageway which she traversed except the two men who were seated on the iron railing. The majority, while recognizing that there was no "crowd" in that part of the passageway which plaintiff used, apparently felt that the people in cars parked in the parking lot, and the customers who were behind her at the left front serving window, constituted sufficient distraction to relieve Mrs. Cauvin of the duty to observe where she was walking. I do not agree.
The photographs which were introduced in evidence show that the passageway in front of the building, on which the accident occurred, was higher than the parking lot. Plaintiff thus had to negotiate a step, which appears to be from two to four inches high, as she left the parking lot and entered the passageway. This step was about as high as the door, while the door lay across the passageway, and approximately the same amount of effort would have been required to step on the passageway as on the door. The step was not painted in red and white colors, and thus it was not nearly as easy to see as was the brightly painted door. For that reason it logically might be said to have constituted a much greater hazard than did the door. No one, of course, suggests that the step was dangerous. If the majority opinion stands in this case, however, to the effect that the door constituted a "hidden danger, trap or pitfall," then it may lead to a later holding that any kind of step on store premises must be classified as a trap or a pitfall.
I think the majority opinion here is in direct conflict with a decision which is being handed down by this court today. See Goins v. State Farm Fire and Casualty Company, 223 So.2d 435. In the Goins case we held that plaintiff, who tripped and fell over a loose wire on a concrete porch, was guilty of contributory negligence in failing to see the wire. In the instant suit the brightly painted door was much easier to see than a loose wire.
In my opinion, plaintiff was grossly negligent in failing to observe the door which lay in her path. I think her negligence in that respect was a proximate and contributing cause of the accident, and that she thus is barred from recovery. If this opinion is allowed to stand and is followed in other cases, it will have the effect of making the storekeeper the absolute insurer of the safety of his invitees, contrary to our existing laws and jurisprudence.
For these reasons, I respectfully dissent.

On Application for Rehearing.
En Banc. Rehearing denied.
HOOD, J., is of the opinion a rehearing should be granted.