233 So.2d 599 (1970)
Nola Abshire BROUSSARD et vir, Plaintiffs-Appellees,
v.
NATIONAL FOOD STORES OF LA., INC., Defendant-Appellant.
No. 2999.
Court of Appeal of Louisiana, Third Circuit.
March 12, 1970.
Rehearing Denied April 14, 1970.
*600 Davidson, Meaux, Onebane & Donohoe, by Edward C. Abell, Jr., Lafayette, for defendant-appellant.
Edwards, Edwards & Broadhurst, by Homer E. Barousse, Jr., Crowley, for plaintiffs-appellees.
Before TATE, FRUGE and SAVOY, JJ.
TATE, Judge.
Mrs. Broussard, the plaintiff, slipped and fell while shopping. She and her husband sue the National Food Stores for damages sustained, mostly a miscarriage and consequent medical expenses. National Food appeals from adverse judgment.
The Facts
National Food operates a self-service supermarket in Crowley. While shopping there, Mrs. Broussard slipped on a wet spot near the check-out stand.
She was wearing tennis shoes with rubber soles. After she slipped, the side of her dress was wet from the substance. Her fall on a wet spot in the store aisle was corroborated by her sister, who was shopping with her.
Neither Mrs. Broussard nor her sister were able to identify the substance on the floor, nor did they know how long it had been there, nor whence it came. When Mrs. Broussard and her husband returned to complain to the store manager (about ten minutes later, according to their testimony), neither they nor the store manager were able to find any wet spot on the floor nor any sign of her fall. (The store manager testified that they had not come until 20-30 minutes after they claimed Mrs. Broussard had fallen.)
The time of Mrs. Broussard's fall was during the afternoon. Her husband estimated it to be around 2:30 P.M. The store manager thought that the fall had occurred at about 4:00 P.M. Other witnesses *601 could not place the time of the fall, except as being in the afternoon.
The store manager and the store's porter testified that it was the porter's duty to clean the floor three times daily, starting at the front and going back at 7:00 to 8:00 A.M., at 11:00 A.M. to 12:00 Noon, and at 3:00 to 4:00 P.M. The porter additionally testified that he checked the floor for debris at 10:00 A.M., 12:00 Noon, and 3:00 P.M.
Between noon and 3:00 P.M. each day the porter was busy bagging groceries. During this time, he did not have any responsibility to check the floor for spilled substances or other hazards.
No other store employee was charged with the regular duty of removing hazards to customer traffic. A cashier stated that, when she was not busy, she might look for and remove foreign substances from the floor.
The porter also testified that it was his duty to mop up liquids spilled near the check-out stand where Mrs. Broussard fell, one of two being operated at the time. He testified that he had no independent recollection as to whether he had found or had mopped up any spilled liquid the afternoon of the fall.
In allowing recovery, the trial court essentially accepted the testimony of the plaintiff's witness that she had fallen on a wet spot on the floor. The trial court felt that the three sweepings or checks per day did not constitute sufficient precautions to remove any substance on the floor which had caused Mrs. Broussard to fall.
The Law
The general principles applicable are not seriously disputed:
A store proprietor is not an insurer of the safety of his patrons. He does, however, owe an affirmative duty to his customers to use ordinary care to keep his aisles, passageways, and floors in a reasonably safe condition.
The duty to use reasonable care extends to every hazard which creates an unreasonable risk of foreseeable harm to his store invitees. This duty includes reasonable inspection of the premises for defects and obstructions to passageway, and reasonable warning of perils which the customers may not see through the exercise of ordinary care. (In this latter regard, it must be taken into consideration that the invitee's attention may be distracted by the advertising and merchandise along the passageways or by the crowded condition of the premises.)
In determining this duty, consideration must be given to several factors, including the nature of the premises, the business purposes for which it is used, the volume of business, the likelihood that the passageway may become obstructed through shopping activities of employees and other customers, and the nature of the obstacle.
In order to impose liability on the store operator, an injured customer must prove by a preponderance of the evidence that a dangerous condition which caused injury to him: (1) was created by the storekeeper himself (or some person for whom he is legally liable); or (2) either (a) was actually known to the storekeeper or his employees or (b) had existed for a sufficient length of time for the storekeeper to have constructive knowledge of it (i. e., that its presence should have been discovered through the exercise of reasonable care). In this respect, the mere fact that a customer falls while using a store aisle does not by itself create any presumption of fault on the part of the storekeeper.
See, for examples, decisions of this court such as: Hay v. Sears, Roebuck & Company, 224 So.2d 496; Chauvin v. United States Fidelity & Guaranty Co., 223 So.2d 441; Lofton v. Travelers Insurance Co., *602 La.App., 208 So.2d 739; Sigler v. Mount Vernon Fire Insurance Co., La.App., 201 So.2d 656; Gauthier v. Liberty Mutual Insurance Co., La.App., 179 So.2d 437; Provost v. Great Atlantic & Pacific Co., La.App., 154 So.2d 597.
Conclusion
Under the existing jurisprudence, the trial court erred to allow Mrs. Broussard to recover for her fall.
Under the trial court's evaluation of the evidence, she may have proved that she fell on a slippery substance which created an unreasonable hazard to the passage of customers. However, she did not also prove how long the substance had been there (if the result of spillage by another customer) nor that the substance had been placed there by the store employees.
Thus, Mrs. Broussard did not prove that National Food had either actual or constructive knowledge of the hazard. It is therefore exempt from liability for the damage sustained by its customer.
Therefore, we must reverse the judgment of the trial court and dismiss the plaintiffs' suit. The costs of this appeal are to be paid by the plaintiffs-appellants.
Reversed.
FRUGÉ, J., dissents, believing that Lofton should be overruled.
TATE, Judge (concurring).
In the writer's opinion, the trial court correctly observed that the strict burden of proof makes it extremely difficult to hold a defendant store liable even if actually at fault under circumstances such as the present. Where essential elements of a fallen customer's claim are (a) who put the slippery substance on the floor? and (b) how long was it there?, it is unlikely that the customer can readily find this information.
The store employees are in a much better position to do so. By putting the burden on the customer to produce this information, the courts place a premium upon the ignorancereal or feignedof the store employees. This is especially so when, as here, the floors had not been cleaned nor inspected during almost three hours before the plaintiff customer fell.
Further, in the large supermarket of today, a store which does not have adequate inspection and cleaning practices may be in a better position to evade liability for floor hazards than one which hires enough employees to clean up the debris left by huge modern self-service operations. The fewer the employees, the fewer the witnesses there may be to observe and testify truthfully as to careless clean-up practices. At any rate, the store with inadequate inspection practice may escape liability for accidental falls through its cost-cutting "economies"; it may thus be in a better competitive position economically than the store which avoids accidents through safety practices which lessen the margin of profit.
As the trial court noted, the store employees here simply disclaimed any knowledge of the fall or of the slippery substance. For instance, there was substantial evidence by the plaintiff's witnesses that the cashier saw the fall. Again, it might be deemed unlikely (in view of the prompt complaint of the fall) that the porter, as he testified, was really never queried as to any slippery substance on the floor, any mopping activity, or any inspection activities on the day of the falluntil just before the trial, eighteen months later, by which time, he had no independent recollection of the day's events. Assuming honest forgetfulness or even worse, the plaintiff's claim is defeated by the silence of those who might best have knowledge of the essential elements of her claim.
Nevertheless, the present reversal is correct under the decision of our majority in Lofton v. Travelers Insurance Co., La. App.3d Cir., 208 So.2d 739.
*603 This decision was rendered at a time when the writer was not serving with this court. He therefore feels it to be appropriate to state his agreement with the position taken by Judges Culpepper and Fruge in their dissent from the majority opinion in that case.
It is to be noted that, in the present instance, no inspection was to be made during the hours of 12:00 Noon to 3:00 P.M., during a busy portion of the store's daily activities. The floor porter was then diverted from floor cleaning and inspection activities to the busy duty of bagging purchases for customers.
In his dissenting opinion in Lofton, 208 So.2d 742, Judge Culpepper suggested that an inference of negligence (res ipsa loquitur) should arise upon a showing of a customer's fall on a foreign substance in a large self-service supermarket, in the absence of any showing that the area had been inspected or cleaned for a reasonable period before the fall.
His suggestion is based on the majority rationals in Pilie v. National Food Stores, 245 La. 276, 158 So.2d 162. Comment was further made that a self-service grocery store accommodating a large number of customers with few employees should inspect its aisles for obvious hazards during frequent intervals, since debris may reasonably be expected; not just (in that case) once in each two-hour period.
In explanation, Judge Culpepper commented, 208 So.2d 744: "The duty of reasonable care owed by this large self-service grocery store to its customers is of a high degree and certainly requires inspection of the aisles and passageways for obvious hazards such as this more often than once every two hours. The defendant has breached this duty. Hence, it has failed to exercise ordinary care to keep its premises reasonable safe for its patrons. * * * This failure of due care, when considered along with all of the other circumstances, makes it more probable than not that the water was on the floor long enough that defendant should have discovered and removed it."
In the present case, the slippery substance was in a most hazardous position, being in the path to the check-out counter. Customers loaded with purchases and looking for the cashier could not reasonably notice it. On the other hand, it might be argued, the cashier and porter, in the immediate vicinity, should have checked and found the substance by periodic visual inspection between serving customers. Nevertheless, until Lofton is overruled, I must concur in the reversal of the trial court's commonsense application of sound legal principles.
On Application for Rehearing.
En Banc. Rehearing denied.
FRUGÉ, J., votes for rehearing.
CULPEPPER, J., concurs in the denial of a rehearing for reasons assigned.
MILLER, J., concurs in the denial of a rehearing for reasons assigned.
CULPEPPER, Judge (concurring in the denial of plaintiffs' application for a rehearing).
For the reasons stated in my dissent in Lofton v. Travelers Insurance Company, 208 So.2d 739 (3rd Cir. 1968) and in Judge Tate's concurring opinion in the present case, I think the plaintiff should recover. However, since writs were denied by our Supreme Court in Lofton, 252 La. 457, 211 So.2d 327 (1968), I must concur in the denial of plaintiffs' application for a rehearing.
MILLER, Judge (concurring).
Since I was not on the panel that heard this case, this is my first opportunity to express my opinion. I vote to deny the application for rehearing for reasons other than those stated in our opinion. I find *604 manifest error in the factual determination that plaintiffs proved an accident.
The accident was not proved because the testimony presented by plaintiffs' witnesses is so contradictory and bizarre. For example, I cannot find convincing answers to these questions: (1) When did plaintiffs report the accident? (2) Was Mr. Broussard in the store at the time of the accident? (3) What caused Mrs. Broussard to slip? (4) In what position did she fall? (5) What time did the accident occur? (6) What injuries did she sustain?
Mrs. Broussard's testimony was taken by defendant for purposes of discovery on January 28, 1969. At trial she testified after the store employees had testified on cross-examination. Her testimony at trial was substantially different than by deposition.
(1) When did plaintiffs report the accident?
In her deposition, Mrs. Broussard was adamant that she and her husband reported the accident to the assistant store manager shortly after the accident and BEFORE they left the store. Tr. 57; 59 (lines 23-28); Tr. 61 (lines 8, 9); Tr. 69. There is no doubt as to her thorough understanding of this significant question concerning her activities after the alleged accident, for at Tr. 69 she testified:
"Q. But you didn't go back in the store that afternoon?
"A. No, sir.
"Q. What I'm saying is you went through the door one time and you came out one time and you didn't go back in or out or anything like that?
"A. Yes, sir.
"Q. And you're sure of that?
"A. Yes, sir.
"Q. And you're also sure you told the manager when you were in the store that same day?
"A. Yes sir."
The fact that Mrs. Gary was not with Mrs. Broussard when the alleged accident was reported to the manager makes it difficult to accept this testimony. Indeed, she changed it at the trial.
Eight months after the deposition was taken, and after having heard the testimony of the store employees, she testified that she left the store after the accident, went out to the car and discussed the matter with Mr. and Mrs. Gary and her husband, then she and her husband went back in the store to report the accident. Tr. 103 (lines 1-8); 196 (lines 2-21); 111 (lines 20-26).
Mrs. Broussard's half sister Mrs. Gary, the only eye witness, gave a statement stating that they left the store after the "slip and fall", and reported the accident by telephone.
(2) Was Mr. Broussard in the store when the accident occurred?
Mr. Broussard's testimony was transcribed on two pages. Tr. 112. He testified that he had been in the store about ten minutes when the accident occurred; that he learned about it when "Jeanette [his wife's half sister] told me that Nola had fell and I ran over there, and a while after, I helped her go out." They stayed outside "not long" then went back in to report the fall to the manager. They did not find anything on the floor.
There was no cross-examination. Mr. Broussard did not deny the testimony (then in the record) of the clerk that checked out Mrs. Broussard and Mrs. Gary that Mr. Broussard was not with the ladies when they checked out. Tr. 88, 89, 91. This makes it difficult to believe the new line of testimony developed at trial, that Mr. Broussard was in the store at the time of *605 the accident. And if he was, why didn't they report the accident then (as Mrs. Broussard had testified by deposition).
Mrs. Gary's statement given March 26, 1969 states that "The husbands remained in the car with the children, while Nola and I went into the store." After describing the accident, she stated:
"We thought that my sister was alright, but by the time we got to the car, she had started to hurt. We told our husbands and they drove us to our mother's house.

"When we got there, my sister discovered she was starting to hemmorage. She was hurting bad.
"I don't recall who, but one of us called the manager and he said to take my sister to the Doctor, after he found out what had happened.
* * * * * *
"The accident happened about 3:30 P.M. after dinner." (Emphasis added.)
Mrs. Broussard's testimony by deposition concerning the location of her husband at the time of the fall was that he was at the other end of the store (Tr. 56, 57); that "My sister helped me up, and he hurried up and came, and he talkedI was hurting and he talked to the assistant manager, and the assistant manager told him to bring me to the doctor." Tr. 57; and that she left the store with her sister and her husband. Tr. 68.
At trial, Mrs. Broussard testified that she told her husband after she "started having a hurting in my stomach" which started to hurt three or four minutes after the accident; that she and her husband went out to the truck, then came back to report the accident to the manager. Tr. 102, 103 and 106.
(3) What caused Mrs. Broussard to slip?
Mrs. Broussard was wearing tennis shoes and allegedly slipped on something "wet". Mrs. Broussard testified that she never saw anything on the floor before or after the accident. Tr. 56, 59 (line 15-16); 67 (line 10); 68. On the other hand she answered the question at trial "Did you see anything on the floor?"
"A. No, sir. It looked kinda wet, a little. But I fell and there was something on my dress, you know. And, I knew they had something on the floor, but I don't know what it was." Tr. 108.
She also testified that she slipped on something "wet or something." Tr. 67 (line 17); 101 (line 11-13); 102 (line 11, 12). She also testified that she got "a little wet" on her clothes, but "not all that much." Tr. 103 (line 12, 13). There is no suggestion that this was shown to the store employees.
On the contrary, it is admitted that when they went to view the site of the alleged fall, there was nothing found which might cause a fall. Tr. 112 (lines 1-9).
Mrs. Gary testified that she saw a "little spot of water on the floor." Tr. 116 (line 9). At line 21 she described it as being "damp." When asked "What was on the floor?", she answered, "I don't know." Tr. 119 (line 7). Still later (at Tr. 122 and 123) she testified that she knows that her sister slipped on "some wet substance," but doesn't know what it was.
The store manager verified that nothing was found on the floor when Mr. and Mrs. Broussard took him to the site of the alleged accident. Tr. 97.
(4) In what position did Mrs. Broussard fall?
Mrs. Broussard's only eye witness Mrs. Gary says "flat backwards." Tr. 47; 120. Even though Mrs. Broussard testified that she fell when her left foot slipped forward, she maintained that she fell forward on her stomach and then rolled on her side. Tr. 62, 108. She testified that during and after the fall she held avocados in both hands. *606 Tr. 63, 111. But at Tr. 104, she testified that she dropped the avocados.
(5) What time did the accident occur?
By deposition, Mrs. Boussard placed the accident at "around 3 or 4 o'clock." Tr. 59. Mrs. Gary's March 1969 statement placed the time at 3:30 P.M. Tr. 48. The store manager "reckoned" the time that Mr. and Mrs. Broussard reported to him as being about 4:20 to 4:30. Tr. 98. He testified that he had seen Mrs. Gary and Mrs. Broussard (not Mr. Broussard) come into the store some 20 or 30 minutes before Mr. and Mrs. Broussard came to him to report the matter.
Mr. Broussard did NOT give any estimate as to the time of the alleged accident.
After Mrs. Broussard heard testimony that the floors were cleaned between 3 and 4 p. m. each day (Tr. 98), she then placed the time of the accident as "2:30, or something like that." Tr. 112. This one (contradictory) reference is the only testimony which places the accident before the clean-up.
(6) What injuries did she sustain?
Mrs. Broussard's testimony would indicate that her back injury was as serious as the alleged abortion difficulty. But the medical testimony preponderates that there was no problem related to the back. The evidence concerning the "abortion" was that she "might" have been six to eight weeks pregnant at the time of the alleged fall. The pregnancy test taken several days post accident was "positive", but two tests taken in June were both negative. During that period she had been treated as though she was pregnant, and there is no evidence indicating when the pregnancy (if there was one) terminated. Once before plaintiff had sustained a voluntary abortion unrelated to trauma.
In my opinion, plaintiffs failed to carry the burden of proving that she sustained an accident in the National Food Store on March 6, 1968. The result reached in our original decision is correct. The application for rehearing is properly denied.