HALL, Judge.
Plaintiff, Mrs. Mae Belle Kinard, was injured when she slipped and fell while shopping at the Kroger supermarket on Hollywood Street in Shreveport. Her fall was caused by the presence of a spot or puddle of liquid on the floor of the aisle in front of the meat and poultry counter. Plaintiff brought suit for damages against The Kroger Company, owner of the store and its insurer, Employers Casualty Company. The district court; without written reasons, rejected plaintiff’s demands and plaintiff has appealed. We affirm the judgment of the district court.
On appeal plaintiff urges that the evidence supports a finding that it is more probable than not that the presence of the foreign substance on the floor was due to the acts of defendant’s employees either in leaving detergent on the floor when it was cleaned prior to the store opening or in allowing water to drip from packages of chickens while being placed in the poultry counter. Plaintiff further urges that defendant created a “danger spot” in front of the poultry counter because of the tendency of the packages of chickens to drip and *827 that defendant failed to take reasonable preventive measures under the circumstances. Plaintiff also contends that in cases of this nature, the deiendant should have the burden of proving it employed adequate cleanup and inspection procedures, which defendant failed to do.
Defendant argues that plaintiff has failed to prove the presence of the liquid on the floor was caused by its employees. Defendant further contends that plaintiff has failed to prove defendant’s employees had actual knowledge of the substance on the floor or that the substance was on the floor so long as to constitute constructive knowledge on the part of defendant. Defendant contends that the entire burden of proof is on plaintiff but even if defendant has the burden of proving it used adequate cleanup and inspection procedures, it has carried this burden in this case.
Plaintiff entered the Kroger store with her grandson for the purpose of grocery shopping at about 10:00 in the morning and the accident happened shortly thereafter. While walking along the aisle in front of the meat and poultry counter, the heel of her shoe slipped through a spot or puddle of liquid on the floor causing her to fall backwards. The substance was described by Gilbert Howard, plaintiff’s grandson, as being some water with little tiny bubbles on it that looked like detergent to him. It was stipulated that Mrs. Eleanor Joiner Howard, plaintiff’s daughter, if present, would have testified she saw a small puddle of water that had some bubbles in it, she thought the water had some soap in it and the water appeared to be in a circle about four inches across. James Richard Woodall, assistant manager of the store, testified the substance looked like water with chicken blood or the drippings from the chickens. It was light red in col- or. Ralph E. Watson, the store manager, described the substance as a puddle of some type of moisture. He did not observe any bubbles or any discoloration. Richard Howard, plaintiff’s son-in-law, described it as a puddle of discolored water that looked like soapy water to him and about five inches in diameter.
Plaintiff did not see the substance on the floor until after she fell and she testified she had no idea how long it had been on the floor.
The evidence shows that Kroger had a special on fryers on the day of the accident. The chickens were delivered to the store in the early morning before it opened, in boxes packed with crushed ice. The chickens were put into a sink in the cutting room, were shaken to get off the loose ice and then bagged in clear plastic bags which were stapled closed. Then they were loaded into wire baskets and put into the cooler until needed at the meat and poultry counter. As needed, the chickens were taken, in the wire baskets, from the cooler to the meat and poultry counter and placed into the counter from the front or aisle side. The testimony showed that after the bags were packed they became moist and would sometimes drip or leak. Watson, the store manager, testified that when fryers are on special “chicken water” would get spilled on the floor and that extra cleanup work was required in front of the meat counter more or less continuously during the day. Ernest Daniel Rider, the meat market manager, testified that water will sometimes get on the floor from the chicken packages either when loading the counter or when a customer picks up a bag and puts it into a shopping basket.
On the day of the accident, the store porter, Brasile Coutee, in accordance with his usual procedure, came to work about 6:00 in the morning. He swept the floors of the store with a broom and then cleaned the floors with a floor machine. The floor machine uses a liquid detergent which it puts down and then picks up. The machine leaves moisture on the floor when the porter makes a turn, but the porter carried a dry mop along with him and wiped the moisture up with the mop as he turned. Coutee finished cleaning the floors about 8:15 or 8:20 and then cleaned *828 the restroom and parking area. He finished these duties about 9:00 and then took a one hour lunch break. He ate his lunch in his car and then walked back to the “break room” about 9:30, passing along the aisle in front of the meat counter where plaintiff fell. Coutee testified that he was not specifically looking, but if something had been on the floor he would have seen it. If there had been a spot of water on the floor in front of the meat counter, he would have seen it and would have either cleaned it himself or gotten someone else to clean it. After the initial cleanup in the morning before the store opened, Coutee was not under any instructions to make any periodic inspection or cleanup of the floor, but was available to perform cleanup work if anybody called on him to do so.
Watson, the store manager, testified it is the duty of the porter to clean the store up completely once a day in the morning before the store opens. Additionally, each employee is instructed, with constant reminders, that anything dropped or spilled on the floor should be cleaned up immediately. These instructions are stressed with employees in the meat department. Watson testified that one of his main jobs is to move around the store constantly throughout the day and that cleanliness and safety are two of the items he checks on. He estimated that on the day of the accident he was in the meat counter area about a half dozen times between 8:30 and the time plaintiff fell. He did not see any debris or water spots or any kind of liquid on the floor.
Rider, the meat department manager, testified he is responsible for that area of the store. He did not recall spilling any water on the floor during the morning while stocking the poultry counter. If he had done so he would have cleaned it up. He has instructions to clean up water that is spilled on the floor. On the morning of the accident, he worked constantly around the meat counter and left the counter to go back into the back room about three to five minutes before plaintiff fell. He was coming back out when informed of the accident by a customer. Prior to the accident, he did not see any water on the floor and if there had been a puddle of liquid five to six inches in diameter he would have seen it and would have cleaned it up immediately.
The evidence does not preponderate in favor of any particular conclusion as to the exact nature or source of the substance on the floor. We cannot conclude, on the basis of the evidence, that it was probably detergent or probably water from the chicken bags or probably any other particular substance. Likewise, we are unable to conclude that it is more probable than not that the presence of the substance on the floor was caused by or was the result of acts of defendant’s employees. Furthermore, there is no evidence that defendant’s employees had any actual knowledge of the presence of the liquid on the floor prior to the accident.
There is no evidence tending to show that the substance had been on the floor for such a length of time that defendant should have known it was there and should have removed it, thereby constituting constructive knowledge on the part of the defendant.
In previous slip and fall cases, this court has consistently applied the principles of law clearly enunciated in Peters v. Great Atlantic & Pacific Tea Co., 72 So.2d 562 (La.App.2d Cir. 1954). Recently, in Nelson v. United States Fidelity & Guaranty Company, 248 So.2d 839 (La.App.2d Cir. 1971), we restated these principles as follows :
“(1) A storekeeper has the responsibility to provide a safe place for his customers. He is not the insurer of their safety, however, and need only keep floors and passageways in a reasonably safe condition for use in a manner consistent with the purpose of the premises.
*829 “(2) He must exercise the degree of care that would be exercised by an ordinary prudent man under similar circumstances.
“(3) His liability arises only when injuries are caused by his negligence, and not as a result of an extraneous object in the store or upon the floor unless the object was dangerous and allowed to remain a source of danger for a longer period of time than that in which it should have been discovered and removed.
“(4) The doctrine of res ipsa loquitur is inapplicable to a storekeeper whose obligation toward his customers is the use of ordinary care to keep aisles, passageways, floors and walks in a reasonably safe condition, and no presumption of fault of the storekeeper arises from the mere fact of injury to a customer.
“(5) One who asserts an obligation for a breach of duty bears the burden of establishing it by a preponderance of the evidence except where his opponent is the most cognizant of facts necessary to decide the issue.”
We further restated the elements which the plaintiff has the burden of proving in order to recover as follows:
“To maintain a cause of action against the owner of a store for injuries resulting from a fall on the premises, plaintiff must show by a clear preponderance of the evidence that: (1) A dangerous condition existed at the point where the fall occurred, i. e., some foreign substance was present to account for the fall; (2) that the dangerous condition or foreign substance caused the fall; (3) that the storekeeper was negligent in allowing the dangerous condition to exist; and
(4) that the storekeeper had actual or constructive knowledge of the dangerous condition. * * * ”
Plaintiff argues that there is a trend away from the strict burden of proof imposed on a plaintiff by the foregoing rules, which burden is virtually impossible for plaintiff to carry in most slip and fall cases. Plaintiff urges this court to adopt the position stated by Judge Culpepper of the Third Circuit in his dissenting opinion in Lofton v. Travelers Insurance Company, 208 So.2d 739 (La.App.3d Cir. 1968) and by Judge Tate, then of the Third Circuit, in his concurring opinion in Broussard v. National Food Stores of La., Inc., 233 So.2d 599 (La.App.3d Cir. 1970). Judge Cul-pepper would apply the doctrine of res ipsa loquitur where the evidence shows that the storekeeper has breached its duty to make reasonable inspection of the premises to discover dangerous and hazardous conditions. In Lofton the evidence did not show how the water on which plaintiff slipped came to be on the floor or how long it had been there, but it was shown that there had been no inspection of the floors by defendant for two hours prior to the accident. Judge Culpepper reasoned, however, that the failure of the defendant to use due care by reasonable inspections, when considered with all of the other circumstances, made it more probable than not that the water was on the floor long enough that defendant should have discovered it and removed it. He reasoned that the inference of negligence is not drawn merely because the accident speaks for itself but because all of the circumstances surrounding the accident are such that, unless an explanation is given by defendant, the only reasonable conclusion is that the accident was due to the omission of defendant’s duty to make inspections.
The majority in Lofton adhered strictly to the rule that plaintiff bore the burden of proving that the substance had been on the floor for an unreasonable length of time so as to charge the storekeeper with constructive knowledge of the hazard, and denied recovery. Writs were denied by the Supreme Court, 252 La. 457, 211 So.2d 327 (1968).
*830 In Broussard, Judge Tate, in his concurring opinion, pointed out that the store employees are in a much better position to show who put the slippery substance on the floor and how long it was there. Putting the burden on the customer to produce this information places a premium upon the ignorance — real or feigned — of the store employees. Judge Tate expressed agreement with Judge Culpepper’s position that an inference of negligence (res ipsa loquitur) should arise upon a showing of a customer’s fall on a foreign substance in a large self-service supermarket, in the absence of any showing that the area had been inspected or cleaned for a reasonable period before the fall.
While not referring to res ipsa loquitur or inference of negligence the First Circuit in Lang v. Winn-Dixie Louisiana, Inc., 230 So.2d 383 (La.App. 1st Cir. 1969), adopted a position substantially in accord with the Third Circuit’s minority position. See also Louis v. J. C. Penney Company, 246 So.2d 294 (La.App. 1st Cir. 1971). In Lang, plaintiff slipped and fell on a piece of okra. There was no evidence that the okra was placed on the floor by the defendant’s employees and there was no evidence of actual notice or knowledge on the part of defendant’s employees. The trial judge held for the plaintiff, however, on the basis that defendant’s lack of due care constituted constructive notice. The trial court was affirmed in an opinion written by Judge Blanche. The appellate court agreed that the defendant’s inspection and cleanup procedures were inadequate in that none of the store employees were in the vicinity of the area where the accident happened for more than one and a half hours prior to the accident, and, therefore, made no inspection at all during that time. The court expressed disagreement with the majority decision in Lofton to the extent that it negates a right of recovery against a storekeeper on the basis of his fault in failing to engage in reasonable inspection procedures and thereby failing to furnish its customers a safe place in which to conduct their business.
The First Circuit approved the holding that defendants were liable on the basis of their inadequate inspection and cleanup procedures under the particular facts and circumstances of the case and the consequent failure on the part of defendants to fulfill their duty of car owed to the plaintiff customer. The court did not specifically discuss burden of proof except by quoting with approval language in Joynes v. Valloft & Dreaux, 1 So.2d 108 (La.App.Orl.1941) to the effect that the burden of showing the length of time the dangerous substance was present is on the plaintiff, subject, however, to the requirement that defendant must first, in a preliminary way, show that in spite of reasonably careful and frequent inspections it was not discovered. It should be noted that the court went on to hold that even' if plaintiffs were required to prove the length of time the okra was on the floor, plaintiffs bore the burden by showing that it had been there from thirty to forty-five minutes. The Supreme Court denied writs in this cáse, stating that on the “totality” of the facts found by the Court of Appeal the result was correct. Lang v. Winn-Dixie Louisiana, Inc., 255 La. 815, 233 So.2d 252 (1970).
It should also be noted that the Supreme Court granted writs in the Broussard case, 256 La. 352, 236 So.2d 494 (1970), on an initial showing that the decision of the Third Circuit in Broussard was in conflict with the First Circuit’s decision in Lang. However, the Supreme Court ultimately decided the Broussard case on a factual basis and did not reach the issue of where the burden of proof lies to show that the defendant did or did not take sufficient precautions to maintain the premises in a safe condition for the use of its customers. Broussard v. National Food Stores of La., Inc., 258 La. 493, 246 So.2d 838 (1971).
In the case now before this court, regardless of where the burden of proof lies, and regardless of the applicability of res ipsa loquitur or inference of negli *831 gence, we conclude that the evidence shows the defendant’s inspection and cleanup procedures in the area where the accident happened on the day of the accident were reasonable and adequate. The floors were thoroughly cleaned at the beginning of the day approximately one and one-half hours prior to the accident. After that time the meat market manager was in the area where the accident happened almost constantly until about five minutes before the accident happened. It was part of his duties to observe the floor and he testified that he did in fact observe the floor and he observed no foreign substances on the floor. The store manager himself was in the area on a half dozen occasions during the one and one-half hours from the time the store opened until the accident happened. It was part of his duties to observe the condition of the floors and he testified he did in fact do so. Considerable emphasis has been made in some of the cited cases on periodic inspections, provisions for which should be made by any supermarket. However, the almost continuous inspection^ and cleanup procedures that actually to^i place in the instant case amount to an even higher degree of care than periodic inspections. The facts and circumstances of this case do not, by reason of burden of proof or inference or presumption or otherwise, justify a finding that the foreign substance was on the floor for an unreasonable period of time so as to constitute constructive knowledge of its presence on the part of the defendant.
Having reached this conclusion on the facts of this case, it is unnecessary for this Court to deal directly with the questions raised in Lofton, Broussard and Lang. These cases point up the necessity for a careful re-examination of the rules of burden of proof in slip and fall cases. It is our thinking at the present time, however, that any modification of the principles of law applied by this Court in cases of this nature over a long period of time should come either in a decision of the Supreme Court or in a case before this Court where a resolution of these questions is material to the outcome of the case.
For the reasons assigned, the judgment of the district court is affirmed at appellant’s cost.
Affirmed.