260 So.2d 71 (1972)
Mrs. Judith FONTANILLE, wife of/and Cleveland Fontanille
v.
WINN-DIXIE LOUISIANA, INC.
No. 4855.
Court of Appeal of Louisiana, Fourth Circuit.
March 21, 1972.
Rehearing Denied April 18, 1972.
Writ Refused May 25, 1972.
*72 Gerald J. Leydecker, New Orleans, for plaintiffs-appellants.
Robert E. Peyton, Christovich & Kearney, New Orleans, for defendant-appellee.
Before CHASEZ, STOULIG and BAILES, JJ.
CHASEZ, Judge.
Plaintiffs, Mrs. Judith Fontanille, wife of/and Cleveland Fontanille filed this suit against defendant, Winn-Dixie Louisiana, Inc., seeking recovery for damages, loss of wages, and medical expenses in the sum of $48,645.00 as occasioned from a slip and fall in defendant's store, allegedly resulting from the negligence of defendant.
After trial on the merits, judgment was rendered in the Twenty-Fourth Judicial District Court for the Parish of Jefferson in favor of the defendant, dismissing plaintiffs' suit. From this adverse judgment plaintiffs have taken this appeal.
*73 On August 2, 1969 Mrs. Judith Fontanille accompanied by her mother, Mrs. Joseph Duronslet, entered the Winn-Dixie store located in Lakeside Shopping Center.
At approximately 5:30 P.M., while shopping through the store the plaintiff slipped and fell on a "half-eaten" or piece of a banana lying on the floor in the "cooking oil aisle", which is located approximately six or seven aisles from the produce department. The store office and check-out stands are located in the front of the store and the cooking oil aisle is one aisle past the last check-out stand.
There is no evidence as to how the banana came to be on the floor or that its presence was caused by the defendant's employees. There is also no direct evidence as to the length of time the banana had been on the floor.
Plaintiffs contend that defendant did have constructive knowledge of the existence of an "inherent or potentially dangerous" object, being that of the banana, by reason of the defendant's breach of duty in failing to maintain reasonable cleanup and inspection procedures and allegedly allowing the aisleways to become cluttered.
Cyril Vinet, defendant's store manager, testified that normally the store is swept twice, once at noon and once again at night upon closing. He also stated that the employees of this store are trained to be on the lookout for anything on the floor when they walk through the store. The manager related that he makes tours of the store as a form of inspection all day long; however, no definite times are assigned and he often becomes confined to the office on busy parts of the day.
The accident occurred on a Saturday, one of the busiest days of the week. Six part-time employees were working on the day of the accident, but at 5:30 P.M. they were all in front of the store bagging groceries as they would normally be when the store becomes busy.
No continuing and definite form of cleanup and inspection can be shown except for the sweeping procedures employed at noon and once again at night upon closing.
The question placed squarely before this court is whether or not the failure to provide reasonable and adequate cleanup and inspection procedures render a store liable when a patron slips and falls on a foreign substance found on the floor of the establishment.
It is well settled that a storekeeper or owner of a business establishment is not the insurer of safety of visitors, however, he has a responsibility to provide a safe place for his customers by keeping floors and passageways in a reasonably safe condition for use in a manner consistent with the purposes of the premises. Peters v. Great Atlantic & Pacific Tea Co., 72 So.2d 562 (La.App., 2d Cir., 1954); Dever v. George Theriot's Inc., 159 So.2d 602 (La.App., 3d Cir., 1964); Levine v. Hartford Accident & Indemnity Company, 149 So.2d 433 (La.App., 3d Cir., 1963).
It is also apparent that a customer must prove a breach of the duty of the owner to use reasonable care and that an owner had either actual or constructive knowledge of the existence of an extraneous substance upon the floor for such a time that the owner had an opportunity to remove it or should have had knowledge of the substance and removed it. Frederic v. Winn-Dixie Louisiana, Inc., 227 So.2d 387 (La.App., 4th Cir., 1969).
Recently there has been a split of authority as to just how the burden of actual or constructive knowledge is to be proved. In Lofton v. Travelers Insurance Company, 208 So.2d 739 (La.App., 3d Cir. 1968) it was held that the doctrine of res ipsa loquitur does not apply and that plaintiff carries the burden of proving actual knowledge or the period of time an extraneous substance remained on a floor to enable a presumption that such knowledge should have existed. *74 In Frederic v. Winn-Dixie Louisiana, Inc., supra, this court cited the Lofton case for the principle that res ipsa loquitur is not applicable to cases of this type and that the burden of proof rests with the plaintiff. See, however, Judge Culpepper's dissent in Lofton v. Travelers Insurance Company, supra; the concurring opinion of Judge Tate in Broussard v. National Food Stores of Louisiana, Inc., 233 So.2d 599 (La.App., 3d Cir., 1970); and the dissenting opinion of Judge Miller in Brown v. Kroger Co., 252 So.2d 336 (La.App., 3d Cir., 1971).
We are convinced that res ipsa loquitur does not apply nor is it an element in this case. We are concerned, however, with the duty of care owed by a storekeeper to his customers. Increasingly, the courts of this state are becoming more aware of the duty of care that an owner or storekeeper owes to his customers in large self-service stores. Phillips v. Great Atlantic & Pacific Food Stores, 256 So.2d 652 (La.App., 2d Cir., 1972), Kinard v. Kroger Company, 255 So.2d 826 (La.App., 2d Cir., 1971); Lang v. Winn-Dixie Louisiana, Inc., 230 So.2d 383 (La.App., 1969); Walters v. Sears, Roebuck and Company, 196 So.2d 563 (La.App., 4th Cir., 1967).
In Lang v. Winn-Dixie Louisiana, Inc., supra, our brethren of the First Circuit Court of Appeals held that the defendant storekeeper's inspection and cleanup procedures were inadequate under the particular facts and circumstances of the case. In that case plaintiff slipped on several pieces of "thawed frozen cut-up okra". It was also shown that it takes thirty to sixty minutes before frozen cut-up okra will thaw. The court felt that the evidence of the case clearly established a lack of adequate inspection and cleanup procedures which did not meet the storekeeper's responsibilities and duty to use reasonable care.
In Walters v. Sears, Roebuck and Company, supra, we held that the proximate cause of the plaintiff's injury (plaintiff fell as a result of a clear, greasy substance spilled in the passageway of the store's toy department) was due to the failure of the store to exercise ordinary care in the maintenance of the passageways of its department store, in neglecting to discover the potentially dangerous condition for at least 45 minutes.
In the present case the floor was last swept four to five and one-half hours before the accident. No definite times for inspections were customarily followed. Instead, the manager made periodic inspections throughout the day when he was not busy. From his testimony, however, we find that Saturdays are very busy days for this store, including the Saturday of the accident.
That a banana on the floor is potentially dangerous cannot be seriously questioned. From the evidence before us it clearly appears that this substance caused her resultant fall and injury. Mrs. Fontanille also asserted that the banana was "yellow and brown and black with a few spots on it", and Mrs. Doronslet, her mother, testified that it was an "overripe" banana.[1] The store manager, however, testified that he picked up the partially squashed, half-eaten banana and that it wasn't brown. There is testimony in the record that it takes 30-40 minutes for a banana to turn brown once exposed to the air. The issue being that if the banana was brown, then it must have been exposed to the air at least thirty minutes, leading to the conclusion that it was on the floor of the store for thirty minutes or longer.
By deposition taken prior to trial, however, the store manager was unsure of the banana's color, except to say that bananas are normally yellow.
*75 We are of the opinion that the preponderance of evidence establishes that the banana was discolored, leading us to the conclusion that the banana was on the floor in excess of thirty or forty minutes.
We are convinced that the plaintiff has shown a lack of reasonable due care that an owner or storekeeper is obligated to exercise in maintaining aisles and passageways in a reasonably safe condition, consistent with the purposes of the premises. The measures employed by the defendant in this case were wholly inadequate to maintain reasonably safe passageways. Had the defendant adopted a reasonable program of maintenance in clearing passageways, he would have discovered the foreign substance on the floor.
A storekeeper's duty to its patrons is not lightly considered. This duty owed by storekeepers is an affirmative one in that he must take active measures to secure safe passageways consistent with the purposes of the store by inspection and cleanup procedures. The defendant in this case has not borne the duty of care expected of it and, accordingly, we reverse the judgment of the lower court; defendant's negligence being the proximate cause of plaintiff's fall and resultant injuries.
The trial court made no determinations as to the damages to be awarded. However, we see no need to remand because the evidence and testimony in the record clearly reflect compensable items of damage which this court can determine without the necessity of remanding the case.
As a result of her fall, plaintiff suffered injuries in the nature of a right lumbar sacral sprain and muscle strain to the right lower sacral spinalis muscles. Immediately after her fall she contacted her family doctor, Dr. Franklin D. Toups, who sent her to the Ochsner Foundation Hospital where x-rays were taken of her lower back and pelvic regions and treatment on an emergency basis was given, along with medication for the pain she was in. Although not thereafter confined to a hospital, Dr. Toups administered physical therapy treatment daily during the months of August and September and, in October, the treatments were performed five times per week; in November and December, two or three times per week; and in January and February the treatments tapered off to once every week or two. The treatment consisted of massages to the lower back and injections of analgesics to relieve her pain. Additional pain medication was also prescribed which are in evidence by drug receipts.
Dr. Toups testified that because of the treatments she has improved slowly but steadily since her fall. He also stated that in his opinion the injury she received was moderate to severe in the areas she complained of and his prognosis was that she is now able to return to work, that she would have chronic muscle damage and that from time to time she could have pain in the muscles involved.
Mrs. Fontanille testified that her social activities and ability to work were curtailed after the accident but that her condition has shown improvement and that she is now able to resume some of her activities.
On September 8, 1969 Dr. G. C. Battalora, Jr., an orthopedic specialist, saw the plaintiff, noted some improvement and prescribed treatment. The plaintiff was seen by Dr. Battalora a total of six times, until April 3, 1970, at which time he prescribed a continuation of exercises for her abdominal region and back.
Before her fall, plaintiff was employed by Upton Printing Company for which she received wages based on an hourly rate of $2.675 per hour. From August 2, 1969 through September 24, 1969 she was unable *76 to work at all and could only work on a part time basis thereafter.
Based on an hourly rate of work performed by Mrs. Fontanille immediately before her injury, the comptroller of Upton Printing Company, Donald Schnieder, estimated the hours and the resultant wage loss incurred by the plaintiff from August 4, 1969 to February 4, 1970, utilizing computer print-outs of payroll and employment. He estimated 344.55 hours lost, which he analyzed as 297.17 hours at $2.675 and 47.38 hours at $2.925, (our computations show 297.17 hours at $2.675 and 49.12 hours at $2.925) which reflected a salary increase that became effective on October 2, 1969. The total wages that were lost is reflected as $938.30 ($794.93 from August 4, 1969 to September 25, 1969 and $143.67 from September 25, 1969 through February 4, 1970.)
In the nature of special damages, as prayed for, plaintiffs are entitled to $75,00 for Ochsner Foundation; $988.00 for Dr. Franklin Toups; $142.00 for Dr. George Battalora, Jr.; $938.60 for loss of wages; $48.55 for taxi charges necessitated by plaintiff's lack of access and inability to drive an automobile as a result of her injury; and $49.64 for drugs duly prescribed for her injury, a total of $2,241.79. In the nature of general damages for plaintiff's pain and suffering and possible permanent disability, we are convinced that $7,500.00 is adequate in view of the evidence contained in the record and previous awards made by the courts of this state in similar situations.
For the foregoing reasons, the judgment of the lower court is reversed and judgment is herein rendered in favor of plaintiffs, Judith Fontanille, wife of/and Cleveland Fontanille, against defendant, Winn-Dixie Louisiana, Inc. in the sum of $9,741.79.
All costs to be paid by the defendant.
Reversed and rendered.
NOTES
[1] Mrs. Duronslet, plaintiff's mother, further testified that the store appeared messy to her that day and that she, prior to the accident, noticed liquid on the floor and the residue of a broken pickle jar in other parts of the store.