GULOTTA, Judge.
Defendant, Gulf Insurance Company, and the insured Louis Silvers appeal from part of a judgment granting a general award in the sum of $10,176.40 to Velma Geneila for injuries sustained in an automobile accident. The total amount of the judgment is $11,477.07. No dispute exists on liability nor on the award for special damages including $762.67 for medical expenses and $538.00 for loss of earnings.
The only issue on appeal is quantum. Defendants complain of the excessiveness of the award to Mrs. Geneila but do not *199 contest the award of $4,924.10 made to the other plaintiff, Johnnie Floyd.
The accident occurred on June 7, 1970, on Hwy. 90, three miles east of the Chef Menteur Bridge in the Parish of Orleans, when a car driven by Barbara Silvers struck a car driven by Johnnie Floyd and in which Mrs. Genella was a passenger.
Plaintiff, seated in the right front, was injured when thrown against the windshield caused by the head-on collision.
Immediately after the accident, plaintiff was taken to the Methodist Hospital where x-rays revealed a comminuted fracture of the distal end of the clavicle. A leg laceration was also sutured.
Thereafter, plaintiff was seen on June 9 by Dr. Joseph Dugas. He found that Mrs. Genella sustained a broken left clavicle; a large hemotoma of the left forehead; a conjunctival hemorrhage of the left eye; a blackened right eye; a laceration on her right leg; a severe contusion to her left knee; an effusion of the knee; and a large ecchymosis of the left buttock.
Dr. Dugas noted spasm and tenderness in the muscles on either side of the spine (paravertebral musculature bilaterally). He also found spasm and tenderness of the large shoulder muscles (cervical trapezius bilaterally) as well as restricted motion of the neck. On June 10, Mrs. Genella commenced diathermy treatment three times a week until September 2.
Dr. Dugas referred plaintiff to Dr. San-to Lococo, an orthopedic surgeon, for treatment of the fractured clavicle. Dr. Lococo recommended the use of a sling. However, plaintiff complained of neck pain while using the sling. On July 31, Dr. Lococo discharged plaintiff, at which time Mrs. Genella had a full range of motion of the arm. The doctor testified he noted no atrophy of the muscles surrounding the clavicle and anticipated no residual traumatic arthritis nor any other permanent disability.
Dr. Lococo found no other evidence of fracture or dislocation.
During the period of treatment by the orthopedist, Dr. Dugas continued to treat Mrs. Genella for her other injuries. On October'9, 1970, because of continued complaints of neck pain radiating into the left extremity, further x-rays were taken which revealed, according to Dr. Dugas, a slight subluxation or slipping forward of the vertebral disc associated with c-5 and c-6. This fact combined with the fact that a slight narrowing of the vertebral space between c-5 and c-6 appeared to exist indicated the possibility of nerve root involvement associated with a herniated disc. Dr. Dugas’ explanation was that Mrs. Genella suffered a severe sprain of the cervical spine with tearing of the posterior longitudinal ligament which causes subluxation suggestive of nerve root irritation and possible disc injury. Dr. Dugas recommended hospitalization for diagnostic tests (myelo-gram and discogram) to determine whether Mrs. Genella had indeed sustained a disc injury. She refused hospitalization and was referred to Dr. Raeburn Llewellyn, a neurosurgeon, for further examination.
It should be noted that Dr. Timothy Haley, a radiologist, testified that he found no subluxation in Mrs. Genella’s October x-rays.
Mrs. Genella was seen by Dr. Llewellyn on November 6, 1970, at which time he found numbness in the left forehead area and in the left scalp, as well as tenderness in the frontal area above the left eye.
He found no positive evidence of a cervical disc injury. He stated, in his opinion, Mrs. Genella did sustain injury to the neck. He stated that her complaints of pain were characteristic of a cervical disc syndrome resulting in muscle spasm and muscle restriction in the neck and arm. However, he stated that it was impossible to determine if disc injury had been sustained without the aid of diagnostic tests. Since Mrs. Genella seemed to be responding to conservative treatment consisting of *200 a restriction in exercise and diathermy treatments, he did not recommend hospitalization. He also stated that her pains could be a result of possible ligamentous strain or a residual from her clavicle injury. At no time, did Dr. Llewellyn review plaintiff’s x-rays.
On May 5, 1971, Mrs. Genella was again seen by Dr. Llewellyn. At that time, she still complained of occasional pain in the neck and shoulder, and of numbness in the forehead. He noted that she still had slight restriction of motion of the cervical spine.
Defendants concede that Mrs. Genella suffered a fractured clavicle. Citing Coleman v. Ross, 232 So.2d 885 (La.App. 2nd Cir. 1970), they contend that an award of $2,000 for such injury would be more than ample.
Defendants also contend that, at most, plaintiff proved that she suffered a mild neck sprain.
They cite several cases[1] where awards for injury of this nature ranged from $1,500 to $2,500. On the basis of these cases, defendants contend the award for general damages should be reduced to $5,000.
Plaintiff contends that the award made was well within the trial judge’s discretion. Mrs. Genella claims that her neck injuries were certainly as severe as those in Fontanille v. Winn-Dixie, 260 So.2d 71 (La. App. 4th Cir. 1972), writ refused, 261 La. 1064, 262 So.2d 44 (1972), in which the appellate court awarded $7,500 in general damages. Plaintiff also cites Tewis v. Zurich, 233 So.2d 357 (La.App. 1st Cir. 1970), writ refused, 256 La. 357, 236 So.2d 496 (1970), in which an award of $15,000 was made for disc injury.
Article 1934(3) of the Louisiana Revised Civil Code provides that in the assessment of damages for offenses or quasi-offenses, much discretion is left to the trial judge or the jury. The duty of intermediate courts in reviewing such awards was set out recently in Revon v. American Guaranty and Liability Ins. Co., 296 So.2d 257 (La.1974), where the Supreme Court stated:
“ ‘From these decisions, two principles emerge: (1) To modify the amount of an award for general damages, an appellate court must find that the trial judge or jury has abused the “much discretion” accorded by the codal provision; (2) The awards in other cases serve only as an aid in determining whether there has been an abuse of discretion and rivet no steel frame of uniformity.’ ”
From our review of the record as reflected hereinabove, we fail to find an abuse of the “much discretion” accorded to the trial judge. The record amply supports the amount of the award. Accordingly, the judgment is affirmed.
Affirmed.

. See Sacco v. Laviolette, 280 So.2d 636 (La. App. 4th Cir. 1973); Hillebrant v. Holsum Bakeries, 267 So.2d 608 (La.App. 4th Cir. 1972); Milano v. Poree, 263 So.2d 94 (La. App. 1st Cir. 1972) ; Bono v. Cousins, 291 So.2d 904 (La.App. 4th Cir. 1974) ; Montou v. Henegan, 250 So.2d 65 (La.App. 3rd Cir. 1971); and Sandrock v. Ayo, 287 So.2d 209 (La.App. 4th Cir. 1974).