311 So.2d 572 (1975)
Nathan F. CHESTER et ux., Plaintiffs and Appellees,
v.
MONTGOMERY WARD & COMPANY, INC., Defendant and Appellant.
No. 4979.
Court of Appeal of Louisiana, Third Circuit.
April 21, 1975.
*573 Gold, Hall, Hammill & Little by James D. Davis, Alexandria, for defendant and appellant.
Whitehead & McCoy by Charles R. Whitehead, Jr., Natchitoches, for plaintiffs and appellees.
Before FRUGE, CULPEPPER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
This is a tort suit resulting from personal injuries sustained by Doris G. Chester on August 25, 1973, while shopping at Montgomery Ward & Company, Inc. in Alexandria, Louisiana. From a judgment in favor of the plaintiff-wife (in the sum of $750.00 for general damages) and in favor of her husband, Nathan Chester, as head and master of the community, (in the sum of $30.60, representing doctor and drug bills) defendant has appealed. Plaintiffs have answered the appeal seeking an increase in the awards.
The facts leading up to this suit are essentially as follows: On the above mentioned date plaintiff-wife, in the company of her sister-in-law and niece, journeyed from Natchitoches, Louisiana, to Alexandria for the purpose of shopping at the defendant's store. Between the hours of 6 o'clock and 7 o'clock P.M., Mrs. Chester, while a patron in the toy department of said shore, and in the process of turning a corner around a merchandise bay or shelf, sustained a cut on the side of her right ankle. The record reflects that the object causing the laceration was a clear plastic counterguard or retainer (on the end of a display shelf located approximately six inches from the floor) which protruded into the aisle of the shopping area. The evidence further preponderates to the effect that the corner of the plastic strip had been previously broken, leaving present a "jagged" edge or corner.
Plaintiff-wife's sister-in-law testified at trial that she was an eye witness to the accident and saw Mrs. Chester "bump" her leg or come into contact with the corner of the shelf and thereafter fall or sit down in the aisle with her leg bleeding. She further indicated that she inspected the area of the accident, noting that there was a plastic strip at the base of the shelf which was not firmly attached and "pulled away" from the corner.
Thomas Riley, the Merchandise Manager of the store, testified he also inspected the area and found the corner of the plastic strip in question had broken off at approximately a 45 degree angle. He also stated at one point that, to his knowledge, the plastic strip did not protrude into the aisle, but elsewhere indicated that he did not know if it was protruding on the day of the accident and that it could have partially slid out of its brackets. At trial it was, however, stipulated that: "An object was protruding into the aisle and the Plaintiff cut her right leg above the ankle on this object, a plastic counter-guard which was protruding into the aisle." Riley also testified that the store had a monthly inspection procedure, but was not aware when a previous inspection had been made or if the shelf had been inspected.
Immediately following the accident the plaintiff was helped to the management office in the store where first aid treatment was administered in an attempt to stop the cut from bleeding. Afterwards, she was taken to a local hospital and received emergency medical treatment, including suturing the laceration and a tetanus injection. The record does not indicate the number of stitches which were used to close the wound but does reveal that the cut was approximately 4 c.m. in length.
Two days after the accident the plaintiff was examined by her family physician in Natchitoches, Dr. Archie Breazeale, who noted the condition of the wound to be satisfactory and that three or four surface sutures had been used to close the cut. No treatment was administered at this time *574 other than changing the dressing on the wound. A couple of days later the doctor removed the stitches, noted a minimal or small amount of infection in the wound, and placed the plaintiff on antibiotics. He indicated the wound had completely healed in three or four weeks but that plaintiff continued to complain about swelling and pain, which he opined was probably due to some bruising or contusion of ligaments in the leg as a result of the accident and the fact that plaintiff worked long hours and was overweight. The doctor, however, stated that the bruising and soreness should have healed and subsided after 6 or 8 weeks. He found no permanent disability due to the wound, but noted a small scar remaining.
This suit was subsequently filed on behalf of the plaintiff-wife and husband seeking damages for pain and suffering, permanent disability, loss of wages, hospital, doctor, and drug bills, and maid expenses. After trial on the merits judgment was rendered in favor of the plaintiffs for general damages and doctor and drug bills. The other claims were denied due to lack of evidence thereon.
In reaching this conclusion the trial judge found that the aforementioned piece of plastic was protruding into the aisle; that it was clear in color and a person walking by it would normally fail to notice it; and that it caused plaintiff's injuries. He further pointed to the recent case of Morais v. Schwegmann Brothers Giant Supermarket, 290 So.2d 357 (La.App.4th Cir. 1974) and applied the rule that a plaintiff who enters a store to go shopping has a right to assume the merchant will provide her with reasonably safe premises in which to shop. Accordingly, the defendant was found negligent. We find no error on the part of the trial judge.
The applicable legal principles concerning a case of this type was recently stated by this court in a "trip and fall" situation, Bergeron v. Employers-Commercial Union Companies, 306 So.2d 367 (La.App.3rd Cir. 1975), where we indicated:
"(1) A store proprietor is not an insurer of the safety of his patrons. He does, however, owe an affirmative duty to his customers to use ordinary care to keep his aisles, passageways, and floors in a reasonably safe condition.
The duty to use reasonable care extends to every hazard which creates an unreasonable risk of foreseeable harm to his store invitees. This duty includes reasonable inspection of the premises for defects and obstructions to passageways, and reasonable warning of perils which the customers may not see through the exercise of ordinary care. (In this latter regard, it must be taken into consideration that the invitee's attention may be distracted by the advertising and merchandise along the passageways or by the crowded condition of the premises.)
(2) In determining this duty, consideration must be given to several factors, including the nature of the premises, the business purposes for which it is used, the volume of business, the likelihood that the passageway may become obstructed through shopping activities of employees and other customers, and the nature of the obstacle.
(3) In order to impose liability on the store operator, an injured customer must prove by a preponderance of the evidence that a dangerous condition which caused injury to him: (1) was created by the storekeeper himself (or some person for whom he is legally liable); or (2) either (a) was actually known to the storekeeper or his employees or (b) had existed for a sufficient length of time for the storekeeper to have constructive knowledge of it (i.e., that its presence should have been discovered through the exercise of reasonable care). . . ." (Quotation from Broussard v. National Food Stores of Louisiana, Inc., 233 So. 2d 599 (La.App.3rd Cir. 1970).
*575 A defective and dangerous condition clearly existed under the facts of this case. The evidence also reflects the shelves had been erected some time in July 1973, or at least a month prior to this accident. Although inspection procedures were allegedly followed by the store in question, it is apparent they were inadequately, if at all, carried out. The hazardous condition in our opinion had existed for such a period as to have been reasonably discoverable, and as a result, the defendant store was negligent.
The defendant also raised the question of contributory negligence on the part of the plaintiff in failing to see the plastic strip. Although the trial judge did not expressly so hold, it was evident from transcribed oral reasons that he found the plaintiff not contributorily negligent. As previously pointed out, the plastic strip was clear and evidently not easily seen or noticeable by a shopper. Additionally, in this case, plaintiff's attention was admittedly focused, not on the floor or the bottom shelf, but on the corner of the aisle, to her front, and/or the shelves of merchandise. Applicable is the general rule that a customer can rely on the passageway being reasonably safe and does not have to observe floor conditions before taking each step. Bergeron v. Employers-Commercial Union Companies, supra; Chauvin v. United States Fidelity & Guaranty Co., 223 So.2d 441 (La.App.3rd Cir. 1969), writ denied, 254 La. 790, 226 So.2d 921 (1969).
The only remaining question is that of quantum. The plaintiff-wife seeks an increase in the amount of general damages from $750.00 to $2,000.00. We opine that the award given by the trial judge is well within his "great discretion".
For the above and foregoing reasons the judgment of the trial court is affirmed at defendant-appellant's costs.
Affirmed.